**NO. 15-1945**

**IN THE**

# United States Court of Appeals

**FOR THE FOURTH CIRCUIT**

IN RE:  CHAILLE DUBOIS

CHAILLE DUBOIS, F/K/A CHAILLE GAINES, F/K/A CANDACE DUBOIS,
F/K/A CANDACE GAINES, F/K/A CANDI GAINES, F/K/A CANDI DUBOIS;
KIMBERLY ADKINS,

*Plaintiffs - Appellants,*

V.

ATLAS ACQUISITIONS LLC,

*Defendant - Appellee.*

AND

TIMOTHY P. BRANIGAN; NANCY SPENCER GRISBY,

*Trustees,*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT
(HONORABLE THOMAS J. CATLIOTA, U.S. BANKRUPTCY JUDGE)

**OPENING BRIEF OF APPELLANTS**

Morgan W. Fisher
LAW OFFICES OF
MORGAN FISHER LLC
172 West Street
Annapolis, MD 21401
(410) 626-6111

*Counsel for Appellants*
*Chaille DuBois and Kimberly Adkins*

Courtney L. Weiner
LAW OFFICES OF
MORGAN FISHER LLC
700 12th Street, Suite 700
Washington, DC 20005
(410) 626-6111

*Counsel for Appellants*
*Chaille DuBois and Kimberly Adkins*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1945__        Caption: __Chaille DuBois et al. v. Atlas Acquisitions LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kimberly Adkins__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑ YES ☐ NO
       If yes, identify any trustee and the members of any creditors' committee:
       1. Nancy Spencer Grisby, Chapter 13 Trustee.
       2. Timothy Branigan, Chapter 13 Trustee

Signature: /s/ Morgan William Fisher                    Date:    09/03/2015

Counsel for: Kimberly Adkins

## CERTIFICATE OF SERVICE
****************************

I certify that on _____09/03/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

       Timothy Branigan, Esq.
       Chapter 13 Trustee
       14502 Greenview Drive, Suite 506
       Laurel, MD 20708

       Nancy Spencer Grigsby
       Chapter 13 Trustee
       4201 Mitchellville Rd. Ste 401
       Bowie, MD 20716

/s/ Morgan William Fisher                              09/03/2015
        (signature)                                       (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1945__          Caption:  Chaille DuBois et al. v. Atlas Acquisitions LLC_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

Chaille DuBois
_____
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                        ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑ YES ☐ NO
      If yes, identify any trustee and the members of any creditors' committee:
      1.  Nancy Spencer Grisby, Chapter 13 Trustee.
      2.  Timothy Branigan, Chapter 13 Trustee

Signature: /s/ Morgan William Fisher          Date:    09/03/2015

Counsel for: Chaille DuBois

# CERTIFICATE OF SERVICE
**************************

I certify that on _____09/03/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Timothy Branigan, Esq.
Chapter 13 Trustee
14502 Greenview Drive, Suite 506
Laurel, MD 20708

Nancy Spencer Grigsby
Chapter 13 Trustee
4201 Mitchellville Rd. Ste 401
Bowie, MD 20716

/s/ Morgan William Fisher                          09/03/2015
          (signature)                                   (date)

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ...................................................................iv

I.    Statement of Subject Matter and Appellate Jurisdiction....................1

II.   Statement of Issues Presented for Review ......................................1

III.  Statement of the Case...................................................................1

     A.    Statement of Facts Relating to Kimberly Adkins ....................1

     B.    Statement of Facts Relating to Chaille Dubois.......................2

     C.    Procedural Background.............................................................3

IV.   Summary of Argument..................................................................4

V.    Argument......................................................................................7

     A.    Standard of Review.................................................................7

     B.    Filing is Proof of Claim is an Attempt to Collect a Debt .......7

          1.    Precedent Has Deemed a Proof of Claim an Attempt to Collect a Debt .................................................................9

          2.    The FDCPA Does Not Conflict with the Automatic Stay.............12

     C.    Filing a Stale Proof of Claim Is a False and Misleading Act Under the FDCPA....................................................................13

          1.    A Proof of Claim Is Similar to, But More Vulnerable Than a Civil Complaint.............................................................15

          2.    The Bankruptcy System Does Not Provide Sufficient Protection to Debtors to Combat Proofs of Claim on Time-Barred Debt.......17

i

      a.  Chapter 13 Trustees Have Insufficient Resources to Object to Stale Claims ..........................................................................17

      b.  Debtors Are Ill-Equipped to Navigate the Objection Process ..19

      c.  Attorneys, If Even Present, Do Not Often Object to Stale Claims ...................................................................................20

      d.  Reliance on the Protections of the Bankruptcy Process Can Have Significant Consequences.................................................21

      e.  The FDCPA's Heightened Scrutiny Is the Appropriate Solution .................................................................................22

   3.  Atlas' Business Model Exploits These Gaps to Undermine the Bankruptcy System .......................................................................23

      a.  Atlas Profits from Weaknesses in the Bankruptcy System ......23

      b.  Atlas' Practices Directly Harm Bankruptcy Debtors................25

      c.  Atlas' Practices Reduce Payments to Legitimate Creditors .....26

   4.  Scheduled, Undisputed Debt Is an Invitation to Participate ..........27

D.  The Bankruptcy Code Does Not Preclude Application of the FDCPA.29

   1.  Bankruptcy "Claims" Do Not Include Unenforceable Debts ........30

   2.  The FDCPA and the Bankruptcy Code Are Overlapping Regulatory Schemes.......................................................................31

      a.  Congress Did Not Intend the Bankruptcy Code to Be Exclusive .................................................................................31

         i.  The Histories of the FDCPA and the Bankruptcy Code Show No Exclusivity.........................................................31

ii.    The Code Gives Bankruptcy Courts Jurisdiction Over Non-Bankruptcy Matters ....................................................33

b.   The FDCPA and the Bankruptcy Code Provide Complementary Remedies ........................................................34

c.   Compliance with Both Statutes Causes No Conflict ...............37

i.    Filing Proofs of Claim Is Optional Under the Bankruptcy Code ..............................................................37

ii.    The Code Does Not Permit Claims to Which the Trustee Must Object ...........................................................38

iii.   The Bankruptcy Rules Provide Sanctions for Knowingly Unenforceable Filings ....................................38

E.   The Bankruptcy Code Does Not Preempt the MCDCA .......................39

1.   The Bankruptcy Code Does Not Expressly Preempt the MCDCA .........................................................................40

2.   The Bankruptcy Code Does Not Occupy the Entire Field.............40

3.   The MCDCA Does Not Conflict with the Bankruptcy Code ........41

VI.   Conclusion .........................................................................42

VII.   Request for Oral Argument ...................................................42

CERTIFICATE OF COMPLIANCE ......................................................45

CERTIFICATE OF SERVICE ...............................................................46

ADDENDUM ...................................................................................47

iii

# TABLE OF AUTHORITIES

## CASES

*In re Avalos*,
    531 B.R. 748 (Bankr. N.D. Ill. 2015) ............................................................31

*B-Real, LLC v. Rogers*,
    405 B.R. 428 (M.D. La. 2009)........................................................................17

*Brimmage v. Quantum3 Group LLC*,
    523 B.R. 134 (Bankr. N.D. Ill. 2015) ...............................................11, 13, 34

*Campbell v. Verizon Wireless S-CA (In re Campbell)*,
    336 B.R. 430 (B.A.P. 9th Cir. 2005) ............................................................28

*Carcieri v. Salazar*,
    555 U.S. 379 (2009)......................................................................................37

*Clomon v. Jackson*,
    988 F.2d 1314 (2nd Cir. 1983) .....................................................................22

*Conn. National Bank v. Germain*,
    503 U.S. 249 (1992)......................................................................................31

*Covert v. LVNV Funding, LLC*,
    779 F.3d 242 (4th Cir. 2015) ...............................................7, 21, 22, 29, 34

*Covert v. LVNV Funding, LLC*,
    *No. DKC 13-0698*, 2013 U.S. Dist. LEXIS 175651
    (D. Md. Dec. 9, 2013)......................................................................4, 8, 11, 12

*Crawford v. LVNV Funding, LLC*,
    758 F.3d 1254 (11th Cir. 2014)...............................................10, 23, 26, 43

*In re Creditrust Corp.*,
    283 B.R. 826 (Bankr. D. Md. 2002) ..............................................................7

*Crosby v. National Foreign Trade Council*,
    530 U.S. 363 (2000)......................................................................................39

*Donnerson v. LVNV Funding, LLC*,
　No. 14 C 8371, 2015 U.S. Dist. LEXIS 40457
　(N.D. Ill. Mar. 27, 2015)........................................................11, 19, 37

*In re Dunaway*,
　531 B.R. 267 (Bankr. W.D. Mo. 2015) ............................................12

*Edwards v. LVNV Funding, LLC*,
　B 13263, Adversary No. 15 A 00384, 2015 Bankr. LEXIS 3411
　(Bankr. N.D. Ill. Oct. 6, 2015)..............................15, 16, 18, 20, 25

*In re Eger*,
　507 B.R. 1 (Bankr. N.D. Ga. 2014) ..................................................13

*FCC v. NextWave Personal Communs. Inc.*,
　537 U.S. 293 (2003)..........................................................................30

*Feggins v LVNV Funding, LLC*,
　No. 141049, 2014 Bankr. LEXIS 5040
　(Bankr. M.D. Ala. Dec. 16, 2014) ............................................23, 43

*Friedman v. America Capital, Ltd.*,
　2012 Bankr. LEXIS 3114, Adv. No. 11-00079
　(Bankr. D. Md. Jul. 10, 2012)...................................................... 33-34

*Gardner v. State of New Jersey*,
　329 U.S. 565 (1947)............................................................................9

*Garfield v. Ocwen*,
　No. 15-527 (2d Cir. 2015) ...............................................................43

*Gatewood v. CP Medical, LLC*,
　533 B.R. 905 (B.A.P. 8th Cir. 2015) ....................................10, 27, 43

*Goodman v. Gorman*,
　534 B.R. 656 (E.D. Va. 2015) ........................................................25

*Hines v. Davidowitz*,
　312 U.S. 52 (1941)............................................................................42

*Holloway v. Am. Infosource, LP, et al.*,
No. 14-80660-WRS, Adv. Pro. No. 15-8038-WRS, 2015 Bankr. LEXIS
3035 (Bankr. M.D. Ala. Sept. 8, 2015) .......................................................23, 24

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.*,
534 U.S. 124 (2001)...........................................................................................35

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
559 U.S. 573 (2010)...........................................................................................27

*Johnson v. Home State Bank*,
501 U.S. 78 (1991).............................................................................................30

*Johnson v. Midland Funding, LLC*,
No. 15-11240-E (11th Cir.) ...............................................................................43

*In re Jones*,
No. 09-14499-BFK2011, Bankr. LEXIS 4083
(Bankr. E.D. Va. Oct. 21, 2011) ........................................................................35

*Kimber v. Federal Financial Corp.*,
668 F. Supp. 1480 (M.D. Ala. 1987) ...................................................................14

*Kouabo v. Chevy Chase Bank, F.S.B.*,
336 F. Supp. 2d 471 (D. Md. 2004)..............................................................8, 41

*In re LaGrone*,
525 B.R. 419 (Bankr. N.D. Ill. 2015) .........................................................11, 13

*Lewallen v. Green Tree Servicing, LLC*,
487 F.3d 1085 (8th Cir. 2007) ...........................................................................10

*Marshall v. PNC Bank, N.A.*,
491 B.R. 217 (Bankr. S.D. Ohio 2012) .............................................................35

*In re Minh Vu Hoang*,
469 B.R. 606 (D. Md. 2012)................................................................................7

*Morrison v. Atlas Acquisitions, LLC*,
No. 15-00080-NVA (2015) ................................................................................43

*Morton v. Mancari*,
    417 U.S. 535 (1974)........................................................................29

*In re Owens*,
    455 B.R. 640 (Bankr. W.D. Mich. 2011) ......................................15

*Owens v. LVNV Funding, LLC*,
    No. 15-2044 (7th Cir.) ...................................................................43

*Patrick v. PYOD, LLC*,
    39 F. Supp. 3d 1032, 1036 (S.D. Ind. 2014)..................................10

*Pennsylvania Department of Public Welfare v. Davenport*,
    495 U.S. 552 (1990)........................................................................30

*POM Wonderful LLC v. Coca-Cola Co.*,
    134 S. Ct. 2228 (2014).......................................................29, 32, 35

*Potterton v. Ryland Group, Inc.*,
    424 A.2d 761 (Md. App. 1981) ......................................................31

*Randolph v. IMBS, Inc.*,
    368 F.3d 726 (7th Cir. 2004) ..............................................31, 34, 40

*Rogers v. B-Real, L.L.C.*,
    391 B.R. 317 (Bankr. M.D. La. 2008)...........................................35

*In re Seak*,
    No. 3:13-bk-5446-PMG, 2015 Bankr. LEXIS 490
    (Bankr. M.D. Fla. Jan. 22, 2015).............................................12, 35

*Sears, Roebuck & Co. v. O'Brien*,
    178 F.3d 962 (8th Cir. Iowa 1999) ................................................41

*In re Secrest*,
    453 B.R. 623 (Bankr. E.D. Va. 2011) ...........................................12

*In re Sekema*,
    523 B.R. 651 (Bankr. N.D. Ind. 2015) ..........................................36

*Sewell v. Atlas Acquisitions, LLC*,
  No. 15-00112-PM (2015) .................................................................................42

*Simmons v. Roundup Funding, LLC*,
  622 F.3d 93 (2d Cir. N.Y. 2010) .....................................................................17

*Simon v. FIA Card Services, N.A.*,
  732 F.3d 259 (3d Cir. N.J. 2013) .....................................................................34

*In re Spence*,
  411 B.R. 230 (Bankr. D. Md. 2009) .................................................................13

*Terrell v. Atlas Acquisitions, LLC*,
  No. 15-00107-JS (2015) ...................................................................................42

*Torres v. Calvary SPV I*,
  No. 15-2132 (3d Cir.) .......................................................................................43

*Travelers Casualty & Surety Co. v. Pacific Gas*,
  549 U.S. 442 (2007)..........................................................................................30

*United States v. National Finance Services*,
  98 F.3d 131 (4th Cir. Md. 1996).......................................................................22

*In re Vaughn*,
  536 B.R. 670, 2015 Bankr. LEXIS 3007 (Bankr. D.S.C. 2015) .....................28

*Wyeth v. Levine*,
  555 U.S. 555 (2009)..........................................................................................40

## STATUTES

11 U.S.C. § 101(5) ....................................................................................10, 30
11 U.S.C. § 330.................................................................................................21
11 U.S.C. § 362(a)(6)........................................................................................12
11 U.S.C. § 501(a) ............................................................................................37
11 U.S.C. § 502(a) ............................................................................................16
11 U.S.C. § 502(b)(1).........................................................................................39
11 U.S.C. § 507(a)(2).........................................................................................27
11 U.S.C. § 524(c) ............................................................................................40

11 U.S.C. § 704(a)(5) ...............................................................17, 38, 42
11 U.S.C. § 1302(a) .................................................................................17
11 U.S.C. § 1302(b)(1) ...........................................................................17
15 U.S.C. § 1692 ...........................................................................1, 8, 27
15 U.S.C. § 1692a(6) ...............................................................................10
15 U.S.C. § 1692e ..............................................................................8, 32
28 U.S.C. § 157(a) ..............................................................................33, 40
28 U.S.C. § 157(b) ...................................................................................1
28 U.S.C. § 157(c) ..................................................................................33
28 U.S.C. §158(d)(2) .................................................................................1
28 U.S.C. § 1334 .......................................................................................1

Md. Code Ann. Com. Law § 14-201, *et seq* .............................................1
Md. Code Ann. Com. Law § 14-201(b) ...................................................40
Md. Code Ann. Com. Law § 14-202(8) ...............................................8, 41
Md. Code Com. Law § 12-101 *et seq* ....................................................31

Colo. Rev. Stat. §§ 12-14-101, *et seq* ..................................................41
Ga. Code Ann. §§ 7-3-1, *et seq* .............................................................41
La. Rev. Stat. Ann. § 9:3562 ..................................................................41

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................................................7
Fed. R. Civ. P. 41(a) ...............................................................................15
Fed. R. Civ. P. 55 ....................................................................................16

Fed. R. Bank. P. 8006(f) ............................................................................1
Fed. R. Bankr. P. 7012 ..............................................................................7
Fed. R. Bankr. P. 3006 .............................................................................15
Fed. R. Bankr. P. 7001(1) ........................................................................33
Fed. R. Bankr. P. 9011(b) ...........................................................38-39, 42
4th Cir. R. 6(c) ..........................................................................................1

## OTHER AUTHORITIES

Bankruptcy Act of 1898, Pub. L. No. 55-541, § 57(a), 30 Stat. 544, 560 (1898) .....9

Bankruptcy Act of 1938, Pub. L. No. 75-696, § 57(a), 52, Stat. 840, 866 (1938) ....9

ix

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978) ...32, 33

Fair Debt Collection Practices Act, Pub. L. No. 95-109, 91 Stat. 5874 (1977) ......32

H.R. Rep. No. 95-595 (1978).....................................................................33

S. Rep. 95-382 (1977) ................................................................4, 14, 27

Exec. Office of U.S. Trs., <u>Handbook for Chapter 13 Standing Trustees</u> (2012).....18

## I.  Statement of Subject Matter and Appellate Jurisdiction

The Bankruptcy Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 157(b) and 1334.  This Court granted Appellants' Petition for Direct Appeal on August 21, 2015, pursuant to Fed. R. Bank. P. 8006(f), Rule 6(c) of this Court's rules, and 28 U.S.C. §158(d)(2).

## II.  Statement of Issues Presented for Review

1.  Can the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, apply in an adversary proceeding under Chapter 13 of the Bankruptcy Code where a debt collector files a proof of claim on a time-barred debt?

2.  Can the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann. Com. Law § 14-201, *et seq.*, apply in an adversary proceeding under Chapter 13 of the Bankruptcy Code where a debt collector files a proof of claim on a time-barred debt?

## III.  Statement of the Case

### A.  Statement of Facts Relating to Kimberly Adkins

Kimberly Adkins commenced bankruptcy proceedings on August 29, 2014 pursuant to Chapter 13 of the Bankruptcy Code.  Adkins Cmplt. I, ¶ 9, J.A. 125.[1] Atlas Acquisitions, LLC ("Atlas") acquired two of Ms. Adkins' debts from Elite

---

[1] Atkins I refers to Adv. P. No. 15-00086.  Atkins II refers to Adv. P. No. 15-00090.

Enterprise Services, LLC ("Elite") on September 15, 2014, and November 18, 2014. Adkins Cmplt. I, Exh. A, J.A. 132; Adkins Cmplt. II, Exh. A, J.A. 143. The original loans attributed to Ms. Adkins were from Check N Go and Impactcashusa, Inc., both payday lenders. Adkins Cmplt. I, ¶ 12 and Exh. A, J.A. 125, 129-31; Adkins Cmplt. II, ¶ 12 and Exh. A, J.A. 136, 140-42. The loans were transferred at least twice to reach Atlas. Adkins Cmplt. I, Exh. A, J.A. 129-32; Adkins Cmplt. II, Exh. A, J.A. 140-43. Though neither debt appeared on the Chapter 13 schedules, Atlas filed proofs of claim in Ms. Adkins' bankruptcy proceedings on September 30, 2014, for $184.62 and on November 20, 2014, for $390.00. Adkins Schedules D-F, J.A. 146-55; Adkins Cmplt. I ¶ 12 and Exh. A, J.A. 125, 129-31; Adkins Cmplt. II, ¶ 12 and Exh. A, J.A. 136, 140-42. Because the debt is not on the schedules, Atlas did not receive notice of the bankruptcy filing. Adkins Cert. of Notice, J.A. 156-59. The last transaction date and the charge off date for the $184.82 loan was May 19, 2009, more than four and a half years before Atlas purchased it. Adkins Cmplt. I, ¶ 12 and Exh. A, J.A. 125, 131. The last transaction date and the charge off date for the $390.00 loan was September 10, 2009, more than five years before Atlas purchased it. Adkins Cmplt. II, ¶ 12 and Exh. A, J.A. 136, 142.

### B.    Statement of Facts Relating to Chaille Dubois

Similarly, Chaille Dubois began bankruptcy proceedings on December 6,

2014, pursuant to Chapter 13 of the Bankruptcy Code.  Dubois Cmplt., ¶ 9, J.A. 50.

Atlas purchased Ms. Dubois' debt from Elite on January 5, 2015.  Dubois Cmplt.,

Exh. A, J.A. 58.  She did not list a debt to Atlas, Elite, or the alleged original

payday lender, Iadvance, on any of her Chapter 13 schedules nor provide Atlas

with notice of the bankruptcy filing.  Dubois Schedules D-F, J.A. 103-23; Dubois

Cert. of Notice, J.A. 98-102; Dubois Cmplt., ¶ 12 and Exh. A, J.A. 50, 55-57.

Atlas filed a proof of claim for $135.00 on January 6, 2015, only a day after

purchasing Ms. Dubois' debt.  *Id*.  The last transaction date for the loan was

October 18, 2008, more than six years before Atlas purchased it, and the charge off

date was March 21, 2009.  Dubois Cmplt., ¶ 12 and Exh. A, J.A. 50, 57.

### C.     Procedural Background

Ms. Adkins and Ms. Dubois filed complaints, respectively, on February 25,

2015, and March 6, 2015.  Adkins Cmplt. I, J.A. 124-32; Adkins Cmplt. II, J.A.

135-43; Dubois Cmplt., J.A. 49-58.  Both objected to Atlas' proofs of claim and

alleged that Atlas' actions in filing the proofs of claim violate the FDCPA.  Adkins

Cmplt. I, ¶¶ 17-29 , J.A. 126-27; Adkins Cmplt. II, ¶¶ 17-29 , J.A. 137-38; Dubois

Cmplt., ¶¶ 17-29, J.A. 51-52.   Ms. Dubois further alleged a violation of the

MCDCA.  Dubois Cmplt., ¶¶ 30-35, J.A. 52-53.  Atlas filed Motions to Dismiss

the Complaint in all three actions on April 27, 2015.    Dubois Dkt. 8; Atkins I Dkt.

8; Atkins II Dkt. 8. The Honorable Thomas J. Catliota heard consolidated oral

argument on both motions on June 8, 2015.  Transcript, J.A. 70-91.  At the hearing,

Judge Catliota ruled in favor of Atlas on the basis of the District Court for the

District of Maryland's ruling in *Covert v. LVNV Funding, LLC*, No. DKC 13-0698,

2013 U.S. Dist. LEXIS 175651 (D. Md. Dec. 9, 2013), and on June 9, 2015, he

entered an order granting the motion as to the FCDPA and the MDCDA claims and

granting, by consent, Appellants' objections to the proofs of claim.  Transcript,

J.A. 86-90; Orders Entering Judgment, J.A. 59-60, 133-34, 144-45.  Judge Catliota

granted the Petitioners' Motion to Consolidate Appeal on July 1, 2015 under the

caption *Dubois, et al. vs. Atlas Acquisitions, LLC*, Adv. Pro. 15-00110.  The

Appellants requested and received permission from the Bankruptcy Court to make

a direct appeal to the Court of Appeals for the Fourth Circuit.  Request for

Certification for Direct Appeal, J.A. 64-69; Order Certifying Direct Appeal, J.A.

93-97.  The Appellants petitioned this Court for permission to file a direct appeal,

which was granted on August 21, 2015.  Petition for Direct Appeal, J.A. 160-64;

Order Granting Permission to Appeal, J.A. 165-66.


## IV.    Summary of Argument

In 1977, Congress recognized a "widespread and serious national problem"

affecting millions of consumers, as well as other businesses.  S. Rep. 95-382, at 2

(1977).  The FDCPA emerged to target unscrupulous debt collectors and quell the

growing tide of abusive practices. Debt collectors have changed tactics, but their strategy is no less pernicious. The "deluge" of filing proofs of claim on time-barred debt in bankruptcy courts is quickly becoming a significant threat to debtors and legitimate creditors alike, and is thwarting the goals of the bankruptcy system.

The same tool that warded off the debt collection crisis in 1977 remains appropriate for the current problem. The FDCPA protects debtors in actions by debt collectors to collect debts. The bankruptcy context, with its indirect and orderly administration of assets, does not detract from the fundamental nature of a proof of claim as an effort to collect a debt. Supreme Court precedent, the language of the FDCPA and the Bankruptcy Code, and common sense all mandate the conclusion that seeking repayment of money is debt collection.

Just as the FDCPA bars the filing of lawsuits by debt collectors on time-barred debts, so, too, does it prohibit the filing of time-barred proofs of claim. Debt collectors seize on the opportunity that the bankruptcy proof of claims process appears to offer them. This process, as currently enforced, allows debt collectors to do what they are barred from doing in any other court under the FDCPA: collect on a time-barred debt. Debt collectors like Atlas have responded to the loophole. They pay a fraction of a percentage of the value to purchase a huge number of loans attributed to those in bankruptcy. They scour the bankruptcy dockets, then ambush debtors with proofs of claim. The Bankruptcy Code gives

5

these proofs of claim presumptive validity absent objection. But the trustees are overwhelmed, the debtors' counsel—where they exist—frequently insufficient, and the debtors uninformed. Objections rarely occur, and these debt buyers almost always get paid, at the expense of the debtors, legitimate creditors, and the integrity of the bankruptcy system.

Neither the FDCPA nor the Bankruptcy Code allows for bringing the unenforceable claims that Atlas and its cohorts file in such large numbers. Yet the tools for deterring these filings are limited under the Bankruptcy Code. The Bankruptcy Code contemplates a concurrent mandate with other types of laws and does not comprehend every issue that might arise in the many areas that intersect with bankruptcy. The FDCPA represents a complementary, overlapping regulatory scheme that can address the current threat.

Just as the FDCPA harmonizes with the Bankruptcy Code, so, too, does the MCDCA. Preemption also does not apply where it was not expressly stated, nor where the Bankruptcy Code does not regulate the full scope of the field.

Atlas boasts of its "knowledge of bankruptcy regulations, technology, operations, and recovery." Atlas Acquisitions, "About Us," http://www.atlasacq.com. But, like a hacker with knowledge of computer systems, Atlas uses its knowledge of the bankruptcy system to wreak havoc on it. The Bankruptcy Code aims to protect both debtors and legitimate creditors. Atlas

6

impedes those goals, attacking the system through its weaknesses in a quest for easy money. This Court, in dicta, has hinted that the FDCPA may be an appropriate remedy for such abuses by debt collectors. It should now fully recognize the FDCPA and its state counterpart as the best firewall against the current assault on the bankruptcy system.

## V.    Argument

### A.    Standard of Review

This case comes before this Court on direct appeal from the Bankruptcy Court of a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012. Accordingly, this Court "review[s] de novo the district court's dismissal of a complaint for failure to state a claim under 12(b)(6)." *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 245 (4th Cir. 2015). The standard of review for bankruptcy decisions applies whether on appeal to a district court or directly to this Court. *In re Minh Vu Hoang*, 469 B.R. 606, 613 (D. Md. 2012) ("A district court reviews a bankruptcy court's dismissal for failure to state a claim under a *de novo* standard of review.")

### B.    Filing is Proof of Claim is an Attempt to Collect a Debt

To make a claim for violation of the FDCPA, a plaintiff must show that "the defendant's conduct in attempting to collect a debt was prohibited by the Act." *In*

7

re Creditrust Corp., 283 B.R. 826, 830 (Bankr. D. Md. 2002); 15 U.S.C. § 1692 *et seq.*[2] The FDCPA does not prescribe any particular form for such an attempt, prohibiting "*any* false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e (emphasis supplied).

Nonetheless, Judge Catliota, adopting in full Judge Chasanow's opinion in *Covert v. LVNV Funding, LLC*, ruled that filing a proof of claim could not constitute an attempt to collect a debt within the meaning of the FDCPA or the MCDCA and held that the Appellants had not stated a claim under either statute. Transcript, J.A. 86-90; *Covert*, No. DKC 13-0698, 2013 U.S. Dist. LEXIS 175651 (D. Md. Dec. 9, 2013).

Neither Supreme Court precedent nor the language of the statutes supports such an interpretation.  At bottom, however, the resolution lies in common sense. Atlas is a debt collector that profits from restarting the clock, through the proof of claim process, on time-barred, otherwise unenforceable debt.  If Atlas is not trying to collect the debt here, what business has it in this proceeding?

---

[2] A plaintiff must also show that "the defendant was a debt collector" and that "the debt was a consumer debt." *Id*.  Similarly, a claim under the MCDCA requires (1) "a collector" (2) "claim[ing] or attempt[ing] or threaten[ing] to enforce a right with [(3)] knowledge that the right does not exist" or with reckless disregard as to the falsity of the existence of the right."  Md. Code Ann. Com. Law § 14-202(8) (West 2013); *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004).

8

### 1.     Precedent Has Deemed a Proof of Claim an Attempt to Collect a Debt

The Supreme Court has said that when a creditor "files a proof of claim . . . it is using a traditional method of collecting a debt.  A proof of claim is, of course, *prima facie* evidence of its validity."  *Gardner v. State of New Jersey,* 329 U.S. 565, 573 (1947).  The fact that the case predates the modern Bankruptcy Code, passed in 1978, does nothing to undermine the continued validity of this statement: the basic proof of claims process remained largely unchanged with the passage of the revisions to the law.[3]  The Supreme Court has issued no contradictory or even questioning opinions in the intervening years on the question of whether a proof of claim is debt collection.  Where the underlying law remains unchanged, the Supreme Court's last pronouncement on the subject continues to stand.

Many other courts have also adopted this common sense view that pursuing

---

[3] The Bankruptcy Acts of 1898 and 1938 both required that proofs of claim "consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so what, securities are held therefor, and whether any, and, if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor." Bankruptcy Act of 1898, Pub. L. No. 55-541, § 57(a), 30 Stat. 544, 560 (1898); Bankruptcy Act of 1938, Pub. L. No. 75-696, § 57(a), 52, Stat. 840, 866 (1938). The proof of claim forms filed today requires a creditor to list, among other basic information, the amount and basis for the claim and whether the claim is secured. Proof of Claim, "Instructions for Proof of Claim Form," Adkins I Cmplt., Exh. A, J.A. 130.  The creditor must certify that the amount incorporates "credit for any payments received toward the debt." *Id.*  Finally, the creditor must sign the form to "declare under penalty of perjury that the information provided is true and correct to the best of [his or her] knowledge." *Id.*

a "right to payment" is, in fact, an attempt to collect a debt, defined as "a specific sum of money due by agreement or otherwise." 11 U.S.C. § 101(5)(A); Black's Law Dictionary 176 (2d Pocket Ed. 2001). The Eleventh Circuit, in *Crawford v. LVNV Funding, LLC*, looked to the definition of "debt collector" in the FDCPA, determining that the term encompasses "'any person who . . . regularly collects or attempts to collect, *directly or indirectly*, debts owed or due or asserted to be owed or due another.'" *Crawford*, 758 F.3d 1254, 1261 (11th Cir. 2014) (quoting 15 U.S.C. § 1692a(6) (emphasis added by the court)). The court then held that "[f]iling a proof of claim is the first step in collecting a debt in bankruptcy and is, at the very least, an 'indirect' means of collecting a debt." *Id*. at 1262. "In essence, the creditor is trying to use the bankruptcy system to collect upon a debt, which it cannot use other legal means to collect." *Patrick v. PYOD, LLC*, 39 F. Supp. 3d 1032, 1036 (S.D. Ind. 2014).

Taking a different approach, the Eighth Circuit held that "'[w]hen a creditor files a proof of claim before the bankruptcy court, this amounts to a civil action to collect the debt, which arguably invokes the litigation machinery.'" *Gatewood v. CP Med., LLC*, 533 B.R. 905, 908 (B.A.P. 8th Cir. 2015) (quoting *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1091 (8th Cir. 2007)). The Bankruptcy Court for the Northern District of Illinois similarly reasoned that "the filing of a proof of claim is merely the bankruptcy analog of filing a complaint or

10

sending a demand letter to recover on a debt outside of bankruptcy" because proofs of claim are automatically granted under the Bankruptcy Code. *Brimmage v. Quantum3 Group LLC*, 523 B.R. 134, 138 (Bankr. N.D. Ill. 2015). It further noted that "a proof of claim is automatically granted when filed, meaning that the claim holder is set to collect on the claim until an objection is both made and subsequently granted." *Id.* (internal citation omitted).

Many courts, including some that ultimately granted motions to dismiss on other grounds, have called out the unpersuasiveness of framing a proof of claim as a mere "request to participate." *Covert*, 2013 U.S. Dist. LEXIS 175651, at *27. The Bankruptcy Court for the Northern District of Illinois held that, "[t]hese euphemisms cannot disguise the undeniable reality that a creditor files a proof of claim to get paid on the debt." The fact that the proofs of claim proceed against the debtor's estate carries no weight under the FDCPA. As one court noted, "§ 1692k of the Act makes debt collectors liable to 'any person' as to whom they violate its provisions, not simply to the consumer who owes the debt subject to collection." *In re LaGrone*, 525 B.R. 419, 425 (Bankr. N.D. Ill. 2015).

The court in *Donnerson v. LVNV Funding, LLC*, bluntly stated, "Defendants' contention that filing a claim in bankruptcy is not an attempt to collect a debt . . . fails the straight face test." No. 14 C 8371, 2015 U.S. Dist. LEXIS 40457, at *10 (N.D. Ill. Mar. 27, 2015). The Bankruptcy Court for the

11

Western District of Missouri agreed that

> [a] proof of claim, of course, is intended to result in some recovery for
> the creditor on the debt set out in the proof of claim, and so filing a
> proof of claim would be within the ordinary meaning of "debt
> collection."

*In re Dunaway*, 531 B.R. 267, 271 (Bankr. W.D. Mo. 2015).  *See also In re Seak*,

No. 3:13-bk-5446-PMG, 2015 Bankr. LEXIS 490, at *6 (Bankr. M.D. Fla. Jan. 22,

2015) (allowing FDCPA claim on filing of proof of claim).

### 2.    The FDCPA Does Not Conflict with the Automatic Stay

At the heart of the *Covert* opinion, Judge Chasanow perceived a conflict

between the FDCPA and the automatic stay provision of the Bankruptcy Code.  11

U.S.C. § 362(a)(6); *Covert*, 2013 U.S. Dist. LEXIS 175651, at *26-27.   Such

conflict is illusory.  The automatic stay functions to concentrate all of a debtor's

potential liabilities in one forum in order "to provide the honest but unfortunate

debtor with a fresh start, and to treat creditors (subject to the priorities established

by Congress) equally."  *In re Secrest*, 453 B.R. 623, 628 (Bankr. E.D. Va. 2011).

Accordingly,

> [t]he automatic stay prevents a creditor from exercising control over
> or obtaining possession of property of the estate.  It stops the race to
> the courthouse to dismember the debtor's estate and assures that, to
> the extent there are assets, the assets will be distributed to creditors
> prorata, subject to the statutory priorities.

*Secrest*, 453 B.R. at 628.

The automatic stay does not, however, "apply to proceedings against the debtor that arise in the same bankruptcy court where the debtor's bankruptcy case is pending." *In re Eger*, 507 B.R. 1, 1 (Bankr. N.D. Ga. 2014) (collecting cases). *See also LaGrone*, 525 B.R. at 425 ("it is well established that the automatic stay does not prohibit actions taken in the bankruptcy case itself"). The Bankruptcy Code does not guarantee full, or even partial satisfaction of debts, but it also does not change the nature of an attempt to receive such satisfaction. The automatic stay is nothing more than an administrative tool to ensure that debt collection proceeds in an orderly manner and to the extent the statute and the debtor's assets allow; it is not a talisman that converts the pursuit of payment by a debt collector into anything other than an action to collect a debt. The automatic stay is simply "irrelevant" to the applicability of the FDCPA *Brimmage*, 523 B.R. at 138.

The Bankruptcy Court for the District of Maryland has not shied away from the maxim, "If it looks like a duck, swims like a duck and quacks like a duck, then it probably is a duck." *In re Spence*, 411 B.R. 230, 245 (Bankr. D. Md. 2009). This Court should embrace it here: if it looks like debt collection, it probably is.

### C.    Filing a Stale Proof of Claim Is a False and Misleading Act Under the FDCPA

Courts have long held that

a debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a

13

reasonable inquiry that that limitations period has been or should be tolled, is an unfair and unconscionable means of collecting the debt.

*Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987).

*See also* Fed. Trade Comm'n, Consumer Information: Time-Barred Debts (July 2013), http://www.consumer.ftc.gov/articles/0117-time-barred-debts ("It's against the law for a collector to sue you or threaten to sue you on a time-barred debt.").[4]

That rationale applies with equal force to the filing of a proof of claim on time-barred debt:[5] debtors in bankruptcy are no less vulnerable to such practices of unscrupulous debt collectors than defendants in civil suits. The presumptive validity of the proof of claim outweighs the protections that the bankruptcy process offers. Indeed, in the face of the concerted efforts to exploit the weaknesses of the system by businesses designed to profit from those shortcomings, the bankruptcy's protections are little more than theoretical.

---

[4] Such a prohibition falls within the FDCPA's general bar on any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Congress included this catchall provision "[w]ithout limiting the general application of the foregoing" and with the stated intent of "enabl[ing] the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." *Id.*; S. Rep. No. 95-382, at 4.

[5] Atlas did not dispute the fact that the proofs of claim in these cases are beyond Maryland's three-year statute of limitations for debt collection suits and consented to judgment upholding the objection to all claims. Orders Entering Judgment, J.A. 59-60, 133-34, 144-45; Md. Cts. & Jud. Proc. Code § 5-101 (three year statute of limitations running from the date of the last transaction).

14

### 1.  A Proof of Claim Is Similar to, But More Vulnerable Than a Civil Complaint

Atlas' filing of a proof of claim on a stale debt is no different in substance than filing a complaint on that debt and may, indeed, be more pernicious.  For both a civil suit and a proof of claim, a creditor seeks assistance from the court to collect a debt.  In a civil suit, that request for assistance takes the form of a complaint; in the bankruptcy context, it takes the form of a proof of claim.[6]  Where a debt falls outside the statute of limitations, a debtor may respond with the statute of limitations as an affirmative defense in a civil suit or in an objection to the claim in a bankruptcy suit.

The analogy between an affirmative defense and an objection, however, hides a key distinction between a civil suit to collect a debt and the filing of a proof of claim: if a debtor fails to answer a civil suit, a creditor must take the additional steps of seeking a default judgment, for which the burden of proof is on the creditor.  The creditor must then undertake a collections process.  *Edwards v.*

---

[6] The Federal Rules of Civil and Bankruptcy Procedure draw further analogy between complaints and proofs of claim.  Fed. R. Bankr. P. 3006 provides for the withdrawal of a proof of claim, relying as a model on Fed. R. Civ. P. 41(a) for withdrawal of a complaint.  Fed. R. Bankr. P. 3006; *In re Owens*, 455 B.R. 640, 644 (Bankr. W.D. Mich. 2011) (internal quotation marks and alterations omitted) ("Like Rule 41(a), the general purpose of Bankruptcy Rule 3006 is to facilitate voluntary withdrawal of claims, while also fixing the point at which the court and the other parties are so committed that withdrawal may no longer be had as of right and judicial permission is required").

*LVNV Funding, LLC*, Case No. 14 B 13263, Adversary No. 15 A 00384, 2015 Bankr. LEXIS 3411, at *9-10 (Bankr. N.D. Ill. Oct. 6, 2015) (comparing civil suits with the proof of claim process; Fed. R. Civ. P. 55.

Even with these safeguards, civil suits on time-barred debt are unlawful under the FDCPA when brought by debt collectors.  The proof of claims process would need even more protection in order to pass muster under the FDCPA where debt collectors are involved—but it has less.  Most significantly, 11 U.S.C. § 502(a) imbues a proof of claim with presumptive validity, deeming it "allowed" unless a "party in interest" objects.  The bankruptcy court reviews all of the claims together as part of the overall bankruptcy plan and provides for payment of the creditors according to the plan.  In other words, a creditor filing a proof of claim on a stale debt need only initiate the action and hope that no one notices that the claim is objectionable.  Unless the trustee, debtor, or debtor's attorney notices that that one claim is time-barred *and* goes through the objection process to call it to the attention of the court, that claim receives no additional scrutiny.  It requires no additional process to become part of the debtor's payment plan.

For the nominal price at which debt buyers like Atlas purchase bankruptcy debt, this strategy need only succeed on a tiny fraction of time to ensure significant financial rewards for minimal effort.  Yet it succeeds in a vast majority of the cases based on the presumption of validity and the weaknesses of the bankruptcy system.

16

## 2. The Bankruptcy System Does Not Provide Sufficient Protection to Debtors to Combat Proofs of Claim on Time-Barred Debt

A number of courts have dismissed FDCPA claims on stale proofs of claim relying primarily on the notion that debtors in bankruptcy have a greater degree of protection than they would in an ordinary lawsuit. *See, e.g.*, *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. N.Y. 2010) (quoting *B-Real, LLC v. Rogers*, 405 B.R. 428, 432 (M.D. La. 2009)) ("While the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers."). The reality in Maryland does not support such an optimistic perspective.

### a. Chapter 13 Trustees Have Insufficient Resources to Object to Stale Claims

The U.S. Trustee's Office, via the Chapter 13 trustees, has a statutory duty to object to any invalid or unenforceable proof of claim.[7] 11 U.S.C. §§ 704(a)(5), 1302(b)(1). Last year, however, the District of Maryland saw 4830 Chapter 13 filings. Bankr. D. Md., Bankr. Filing Statistics for D. Md., http://www.mdb.uscourts.gov/content/case-statistics. Maryland has only three Chapter 13 trustees to manage those nearly 5,000 cases. Bankr. D. Md., Trustees,

---

[7] The U.S. Trustee delegates authority to the Chapter 13 trustees pursuant to 11 U.S.C. § 1302(a).

http://www.mdb.uscourts.gov/content/trustees.  In order to file an objection to a

time-barred proof of claim, a trustee must closely review the proof of claim to

determine that it is, in fact, unenforceable.  With an estimated average of ten proofs

of claim in each of the approximately 5000 cases, it is physically impossible for the

Chapter 13 trustees to provide such scrutiny to each and every claim.

"[E]xamin[ing] the details of virtually every unsecured proof of claim . . . is simply

impracticable."  *Edwards*, 2015 Bankr. LEXIS 3411, at *11.  Indeed, the Chapter

13 trustee handbook does not even mention the statute of limitations as a potential

ground for objection, notwithstanding the unenforceability of the claims.  Dep't of

Justice, Exec. Office of U.S. Trs., <u>Handbook for Chapter 13 Standing Trustees</u>

(2012), at 3-23, *available at*

http://www.justice.gov/sites/default/files/ust/legacy/2015/05/05/Handbook_Ch13_

Standing_Trustees_2012.pdf.  Accordingly,

> [i]n districts like this with a large number of chapter 13 cases,
> however, trustees typically object to claims only if they are filed after
> the claims bar date or improperly seek priority treatment, i.e., the
> easiest-to-detect bases for disallowance. Chapter 13 trustees in this
> district do not object to proofs of claim based on statute of limitations
> defenses.

*Edwards*, 2015 Bankr. LEXIS 3411, at *10.  By necessity, and in a reversal of the

18

statutory design, trustees often must rely on debtors to spot unenforceable claims.[8]

The outcome is few, if any, objections.

### b. Debtors Are Ill-Equipped to Navigate the Objection Process

Though the debtors themselves may be closer to the cases, they are rarely

positioned to call the trustees' attention to objectionable claims. Most importantly,

debtors are not served with proofs of claim. They must know that they need to

seek them out, and how to do so, to even take an initial step. In addition, "[a]n

unsophisticated consumer . . . may not be aware of the trustee's statutory duties—

much less whether a particular claim filed against his or her bankruptcy estate is

subject to a statute of limitations defense." *Donnerson*, 2015 U.S. Dist. LEXIS

40457, at *16-17.

In cases such as the ones at bar, the debtors may not even be aware of the

debt, reinforcing the backwardness of allowing such claims and harkening back to

the same concerns raised by the court in *Kimber*. That court noted that, "[b]ecause

few unsophisticated consumers would be aware that a statute of limitations could

be used to defend against lawsuits based on stale debts, such consumers would

---

[8] Notably, it is those most in need of support who often get the least. The poorest debtors, those most ill-equipped to navigate the legal system, frequently have the most proofs of claim in their Chapter 13 cases. Those often consist of payday loans and a multitude of other small debts, sometimes resulting in 40 or more claims in a single case. These debtors are in no position to evaluate the enforceability of those claims.

unwittingly acquiesce to such lawsuits." Debtors frequently bear the primary

burden of objecting to time-barred proofs of claim, in spite of the supposed

protections of the bankruptcy system. As a result, they find themselves in

precisely the position the prompted the *Kimber* court to apply the FDCPA.

### c. Attorneys, If Even Present, Do Not Often Object to Stale Claims

The frequency of debtor representation also provides little comfort. Nearly

20% of debtors in Chapter 13 cases are *pro se*. "For *pro se* debtors who are not

familiar with the legal system or the peculiarities of bankruptcy law and procedure,

filing a viable objection to a claim could be very daunting." *Edwards*, 2015 Bankr.

LEXIS 3411, at *13-14. The court in *Edwards* could not recall a single instance of

a *pro se* debtor filing an objection in the prior 16 years, and there is no reason to

believe that debtors in Maryland are any more familiar with the legal system than

those in Illinois. *Id*. at *14.

Even those with attorneys rarely object, for a variety of reasons. As the

*Edwards* court noted, "some counsel are less diligent than others." *Id.* at *13. Yet

the objection process is far from simple for a debtor unfamiliar with the legal

system—or even for an uninitiated attorney. In order to file an objection, the

debtor or her counsel must (1) review the proof of claim for any admissions; (2)

obtain a declaration from the debtor about the age of the debt and/or her lack of

knowledge about it; (3) prepare and file the objection itself, along with a notice and

proposed order; (4) serve the objection on the trustee, the claim-filer, and the

creditor (or the creditor's registered agent); (5) at the judge's discretion, participate

in a hearing.  All of that work, if done by an attorney, comes at the expense of the

estate.  11 U.S.C. § 330.

Because of the presumptive validity of proofs of claim, the burden may be

quite high even for those debtors or counsel who do attempt to object.  In *In re*

*Herron*, the debtor filed an objection based on his contention that the debt was

time-barred.  381 B.R. 184 (Bankr. D. Md. 2008).  The creditor did not respond or

even attend the hearing.  *Id.* at 187.  Nonetheless, the court rejected the objection,

stating that,

> while certain dates and corresponding references included in the
> Summary could be interpreted to inferentially support Debtor's
> contention, without a precise explanation grounded in admissible
> evidence as to when and why the limitations period had expire it was
> impossible to conclude with certainty that Debtor's objection should
> be sustained.

*Id.*  Atlas should not be in a position to routinely force Appellants and others like

them to spend resources waging such battles on patently unenforceable claims.

### d.    Reliance on the Protections of the Bankruptcy Process Can Have Significant Consequences

This Court's own opinion in *Covert v. LVNV Funding, LLC*, 779 F.3d 242,

246 (4th Cir. 2015) illustrates the dangers of relying solely on the protections of

the bankruptcy process.  The trustee in that case approved a time-barred claim,

21

with no objection by the debtor's attorney, and both the trustee and the bankruptcy court approved it as part of the bankruptcy plan. On appeal, the Court determined that *res judicata* applied based on the Bankruptcy Court's approval of the plan and declined to reach the FDCPA question. *Id.* ("confirmation of a bankruptcy plan is a final judgment on the merits").[9] Absent an objection, therefore, the claim becomes part of the bankruptcy plan and once it is approved, the debtor is stuck with it.

### e.    The FDCPA's Heightened Scrutiny Is the Appropriate Solution

The debtor cannot rely on the trustee for protection in these intentionally outmatched circumstances. She may or may not be able to rely on counsel, if she even has counsel. The "least sophisticated consumer" standard of the FDCPA addresses just such a scenario:

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. . . . [T]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.

*United States v. National Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. Md. 1996) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1983) (internal

---

[9] In *Covert*, the debtor did not object to the proof of claim and only filed an FDCPA action. 779 F.3d at 248. Here, Appellants have both objected, in order to directly challenge the validity of the proofs of claim, and filed FDCPA actions to recover damages for the necessity of objecting to proofs of claim that should never have been filed.

citations omitted)).  Where, as here, the bankruptcy system does not, or cannot

protect debtors from debt collectors targeting their unenforceable debts, the

heightened standard of the FDCPA is appropriate.

### 3. Atlas' Business Model Exploits These Gaps to Undermine the Bankruptcy System

#### a. Atlas Profits from Weaknesses in the Bankruptcy System

Atlas' business model is the creeping vine that has grown out of these cracks

in the bankruptcy system.  And like any invasive species, if not properly pruned, it

becomes a threat to the structural integrity of its host.  Yet the frequency of these

out-of-statute proof of claim filing is high and on the rise.  The Court of Appeals

for the Eleventh Circuit called it a "deluge."  *Crawford v. LVNV Funding, LLC*,

758 F.3d 1254, 1256 (11th Cir. 2014).  Another case refused to stay fourteen

individual cases against a single debt buyer. *Feggins v LVNV Funding, LLC*, No.

14-1049, 2014 Bankr. LEXIS 5040 (Bankr. M.D. Ala. Dec. 16, 2014).  Counsel for

Appellants brought claims on behalf of three other debtors against Atlas alone.

Atlas and its peers have no doubt filed countless similar proofs of claim in

Maryland that have yet to be detected, most of which never will be.  *See e.g.*,

*Holloway v. Am. Infosource, LP, et al.*, No. 14-80660-WRS, Adv. Pro. No. 15-

8038-WRS, 2015 Bankr. LEXIS 3035 (Bankr. M.D. Ala. Sept. 8, 2015) (denying

Atlas' motion to dismiss for FDCPA claim on proofs of claim on stale debt).

Atlas' entire corporate purpose involves the purchase of bankruptcy debt in order to collect on it through the claims process. Billing itself as "Bankruptcy Debt Buyers" specializing in "The World of Bankruptcy," Atlas' website proclaims, "We buy chapters 7 and 13 bankruptcy debt." Atlas Acquisitions, http://www.atlasacq.com. Atlas' scheme is simple: it pays a fraction of a cent on the dollar to buy debt from other debt collectors. That debt is years beyond the statute of limitations bar and unenforceable in any state court. Most significantly, however, the debtors have all recently filed for bankruptcy, giving Atlas its key opportunity: within weeks or even days of purchasing the debt, it immediately files proofs of claim in the bankruptcy cases, with the full awareness that the claims are stale and otherwise unenforceable. Nonetheless, the Bankruptcy Code gives each proof of claim presumptive validity.

"Atlas's . . . conduct games the system by taking advantage of the Bankruptcy Code's automatic claims allowance process." *Holloway*, 2015 Bankr. LEXIS 3035, at *13. Atlas specifically buys this debt *because* the debtors are in bankruptcy and goes looking for debtors in such situations. *See* Adkins Cert. of Notice, J.A. 156-59 (Atlas not informed of bankruptcy petition); Dubois Cert. of Notice, J.A. 98-102 (same). Where the bankruptcy system sees people at their most vulnerable and in need of protection, Atlas sees a ripe opportunity for a payday. If even a small percentage of the proofs of claim it files evade detection

24

and objection by the debtor, the trustee, or the court, Atlas succeeds financially.

Indeed, Atlas is likely to receive some level of payment on nearly *all* of its claims.

If anyone was

> in fact objecting to every stale claim in this district and across the
> country, the business of buying stale claims and filing proofs of claim
> in bankruptcy to collect on them would not be profitable and the
> practice would likely have ended shortly after it began.

*Edwards*, 2015 Bankr. LEXIS 3411, at *11.

### b. Atlas' Practices Directly Harm Bankruptcy Debtors

The implications of this practice on the bankruptcy system and its

participants are significant. At minimum, the debtors emerge from bankruptcy

potentially obligated on a debt they had not owed before entering into the process,

confounding the goal of bankruptcy to give debtors a "fresh start." Indeed, the

bankruptcy process does not shield debtors from the potential financial effects of

these time-barred claims. Under Chapter 13, a debtor pays her creditors from

future earnings. The amount of money available to pay creditors may be set

initially according to a bankruptcy plan and provide only for partial payment to

unsecured creditors. A variety of post-bankruptcy circumstances[10] could easily

convert the debtor's partial payment obligations to full payment obligations.

Where a proof of claim evaded objection and made it into a bankruptcy plan, the

---

[10] Receipt of an inheritance, for example, could "substantially changed[] Debtor's
financial circumstances such that a modification of her Chapter 13 Plan [would be]
warranted." *Goodman v. Gorman*, 534 B.R. 656, 660 (E.D. Va. 2015).

effect for a debtor may be to restore a full, enforceable payment obligation where none previously existed.

Moreover, many debtors aspire to enter 100% payback plans.[11]  These plans allow them to avoid the caps on and micromanagement of their personal expenses that come with less than full payment plans.  Proofs of claim for unenforceable debt raise the total obligation amount and impede a debtor's ability to enter a 100% payment plan.

### c.  Atlas' Practices Reduce Payments to Legitimate Creditors

The impact on other unsecured creditors is particularly galling: most follow proper bankruptcy procedure, filing proofs of claim on debt that falls within the statute of limitations.  Their ranks include direct creditors, government entities, and the many debt collectors that do not seek the shortcuts that Atlas does.  "Such a distribution of funds to debt collectors with time-barred claims then necessarily reduces the payments to other legitimate creditors with enforceable claims." *Crawford*, 758 F.3d at 1261.  To that end, it is noteworthy that the FDCPA specifically addresses the goal of "insur[ing] that those debt collectors who refrain

---

[11] In order to gain trustee and court approval for a less than full payment plan, a debtor must devote all of her disposable income to fund the plan.  The determination of disposable income is frequently an involved process that requires analyzing multiple long forms and significant scrutiny of the debtor's household expenses.

from using abusive debt collection practices are not competitively disadvantaged."
15 U.S.C. § 1692(e).  *See also Jerman v. Carlisle, McNellie, Rini, Kramer &
Ulrich LPA*, 559 U.S. 573, 577 (2010) (listing the prevention of "competitive
disadvantage[]" for non-abusive debt collectors as a goal of the FDCPA).[12]  Atlas'
behavior falls squarely within the FDCPA's mission to protect creditors.

In addition, even if there are objections to these proofs of claim, the
increased administrative costs[13] associated with them with also decrease the funds
available to legitimate creditors.  Where, as with Ms. Adkins, debtor counsel opts
for hourly payment, those administrative costs are even more significant and lower
the overall value of the estate.

### 4.     Scheduled, Undisputed Debt *Is* an Invitation to Participate

Some courts, most notably the Eighth Circuit in *Gatewood*, have declined to
apply the FDCPA to "an accurate proof of claim containing all the required
information, including the timing of the debt."  *Gatewood v. CP Med., LLC*, 533
B.R. 905, 910 (B.A.P. 8th Cir. 2015).  The Eighth Circuit, however, glossed over a
key point: the Gatewoods scheduled their debt, prior to the filing of the proof of
claim, and failed to list it as disputed.  While that alone may not reaffirmed the
debt and restart the statute of limitations, it evidences some intent to do so—or at

---

[12] The major associations of debt collectors supported the passage of the FDCPA at
the time.  S. Rep. No. 95-382, at 2.
[13] Administrative costs have priority over most creditors.  11 U.S.C. § 507(a)(2).

27

least to discuss it.[14]  The issue was not, therefore, whether or not the FDCPA applied to the claim but the fact that, by indicating recognition of the debt and manifesting potential signs of acknowledging it, the Gatewoods invited CP Medical to file a proof of claim.

Here, the Appellants' debts were unscheduled: not only did Appellants challenge the enforceability of the debts, they did not even know and/or remember that the debts existed.  Atkins Schedules D-F, J.A. 146-55; Dubois Schedules D-F, J.A. 103-23.  Atlas had never contacted them about the debts, nor had it received notice on the bankruptcies.  Adkins Cert. of Notice, J.A. 156-59; Dubois Cert. of Notice, J.A. 98-102.  Indeed, Atlas only purchased the debts *two days* before filing the proof of claim on one of Ms. Adkins' debts and *one day* before filing on Ms. Dubois'.  Traditional, inefficient collection methods were never Atlas' aim under its business model, particularly where debtors have no legal obligation to pay. Instead, Atlas trolls bankruptcy dockets.  It seeks out debt attributed to those debtors so it can pounce with proofs of claim.  The distinction between the

---

[14] "[T]he bankruptcy court may properly consider as admissions or evidence any information contained in debtor's bankruptcy schedules... ." *Campbell v. Verizon Wireless S-CA* (In re Campbell), 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005). Initially scheduling a debt as undisputed does not automatically revive the debt but "is notice to a creditor that its debt will be paid along with the debtor's other debts, in accordance with the filed proof of claim, claims objection process, and other bankruptcy provisions."  *In re Vaughn*, 536 B.R. 670, 2015 Bankr. LEXIS 3007, at *13 (Bankr. D.S.C. 2015).  It is an invitation.

*Gatewood* debt collectors and Atlas, therefore, is as between an invited houseguest and an uninvited, unwanted party crasher.

### D.   The Bankruptcy Code Does Not Preclude Application of the FDCPA

The Supreme Court has directed courts to read federal statutes together whenever possible, clearly stating the principle that

> courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.

*Morton v. Mancari*, 417 U.S. 535, 551 (1974).  Pick and choose, however, is exactly what Atlas would have this Court do, by manufacturing a false conflict between the FDCPA and the Bankruptcy Code.[15]  This Court foresaw no conflict between the statutes when it previewed the issue in *Covert*.  *Covert*, 779 F.3d at 248.  Both the texts and histories of the statutes point towards overlapping, complementary schemes to protect debtors and creditors.  Neither statute contemplates the filings of proofs of claim on time-barred debt that currently plague the bankruptcy system.

---

[15] The law of preclusion, rather than preemption, governs the assessment of potential conflict between two federal statutes.  *POM Wonderful LLC v. Coca-Cola Co.*, 134 S.Ct. 2228, 2236 (2014) ("this is not a pre-emption case. . . . This case, however, concerns the alleged preclusion of a cause of action under one federal statute by the provisions of another federal statute.")

### 1.    Bankruptcy "Claims" Do Not Include Unenforceable Debts

By its own terms, the Bankruptcy Code does not contemplate the filing of

proofs of claim on time-barred debt.  The Code defines "claim" as a

> right to payment, whether or not such right is reduced to judgment,
> liquidated, unliquidated, fixed, contingent, matured, unmatured,
> disputed, undisputed, legal, equitable, secured, or unsecured. . . .

11 U.S.C. § 101(5)(A).  The list of variables that still make for a valid proof of

claim, notably, does *not* include "unenforceable."  Supreme Court precedent

supports the notion that the Bankruptcy Code only provides for filing proofs of

claim as to enforceable debts:

> Under the Bankruptcy Code, "debt" means "liability on a claim," and
> "claim," in turn, includes any "right to payment."  We have said that "claim"
> has "the broadest available definition," and have held that the "plain
> meaning of a 'right to payment' is nothing more nor less than an *enforceable
> obligation*."

*FCC v. NextWave Pers. Communs. Inc.*, 537 U.S. 293, 302-303 (2003) (quoting

*Johnson* v. *Home State Bank,* 501 U.S. 78, 83 (1991), and *Pennsylvania Dept. of*

*Public Welfare* v. *Davenport,* 495 U.S. 552, 559 (1990), emphasis supplied,

internal citations omitted).  Moreover, "when the Bankruptcy Code uses the word

'claim' . . . it is usually referring to a right to payment recognized under state law."

*Travelers Cas. & Sur. Co. v. Pacific Gas*, 549 U.S. 442, 451 (2007) (internal

citation omitted).  Under Maryland law, a debt remains, but only as a "moral

30

obligation to pay" without the force of law behind it.[16]  *Potterton v. Ryland Group, Inc.*, 424 A. 2d 761, 375 (Md. App. 1981).  "Without more, a moral obligation is not a claim under § 101(5)."  *In re Avalos*, 531 B.R. 748, 754 (Bankr. N.D. Ill. 2015).

### 2.    The FDCPA and the Bankruptcy Code Are Overlapping Regulatory Schemes

#### a.    Congress Did Not Intend the Bankruptcy Code to Be Exclusive

Nothing in the Bankruptcy Code indicates any Congressional intent that it would be the exclusive remedy for all disputes between creditors and debtors.  This Court should not read such a requirement into the statute. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.")  *See also Randolph v. IMBS, Inc.*, 368 F.3d 726, 731 (7th Cir. 2004) (rejecting the notion that the Bankruptcy Code is "comprehensive").

#### i.  The Histories of the FDCPA and the Bankruptcy Code Show No Exclusivity

Indeed, the very same Congress passed the FDCPA and the modern

---

[16] Appellants do not even have a moral obligation to pay the debts at issue here: Ms. Adkins does not recall incurring the debts in the first place.  Moreover, both debts were payday loans, which are illegal in Maryland.  Md. Code Com. Law § 12-101 *et seq*.

Bankruptcy Code, a mere year apart. It no doubt foresaw the overlap between the interrelated fields of debt collection and bankruptcy. Where, as here the exact same group of individuals crafted, debated, and voted on the two allegedly conflicting laws, the presumption that the 95th Congress intended no conflict where it stated none, is overwhelming. *See* Fair Debt Collection Practices Act, Pub. L. No. 95-109, 91 Stat. 5874 (1977); Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978).

In addition, these statutes have co-existed for nearly 40 years with nothing in the text of either statute evidencing any intent to bar FDCPA claims in bankruptcy. "If Congress had concluded, in light of experience," that the FDCPA interfered with the Bankruptcy Code, "it might well have enacted a provision addressing the issue during these . . . years." *POM Wonderful*, 134 S.Ct. at 2237 (discussing the similar co-existence of the Lanham Act and the FDCA). Instead, the FDCPA has a broad mandate that includes "*any* false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (emphasis supplied). The FDCPA has been amended at least twice without limiting its application. The Bankruptcy Code has been amended more than ten times since 1978. After so many amendments, the lack of any sort of provision in the Bankruptcy Code barring FDCPA suits is equally "powerful evidence that Congress did not intend" the Bankruptcy Code to be the exclusive remedy. *Id.*

### ii.  The Code Gives Bankruptcy Courts Jurisdiction Over Non-Bankruptcy Matters

The Bankruptcy Code also specifically provides the bankruptcy courts with jurisdiction over "non-core" proceedings relating to the subject of the bankruptcy. 28 U.S.C. § 157(c).  The statute uses broad terms, giving the courts authority in "*any or all* proceedings . . . arising in or related to a case under title 11."  28 U.S.C. § 157(a).  *See also* Fed. R. Bankr. P. 7001(1) (providing for jurisdiction over "a proceeding to recover money or property." In other words, Congress created a means by which debtors could pursue additional remedies against creditor and places no limits on it; indeed, it did the opposite.

Such a jurisdictional grant clearly indicates Congress' expectation that suits that provide overlapping remedies would be filed in bankruptcy court.  It said as much at the time it passed the Bankruptcy Reform Act of 1978:

> Finally, in many areas of policy, it is appropriate to leave to the courts to determine on a case-by-case basis the need for remedies.  In this area, however, that kind of solution is not a solution at all, but the source of the problem that exists in the current system.  The issue is one that must be resolved by a legislative finding that the current limited jurisdiction of the bankruptcy courts operates to the detriment of bankruptcy litigants, creditors, and debtors, and a legislative determination that the bankruptcy courts have the jurisdiction necessary to dispose of bankruptcy cases expeditiously.

H.R. Rep. No. 95-595, at 52 (1978).  Indeed, the expanded jurisdiction allows trustees and debtors to pursue remedies that complement the bankruptcy proceedings.  *See, e.g.*, *Friedman v. Am. Capital, Ltd.*, 2012 Bankr. LEXIS 3114,

33

No. 09-12066 -DK, Adv. No. 11-00079 (Bankr. D. Md. Jul. 10, 2012) (claim by

trustee under New York and Maryland laws for fraudulent transfer).  The terms of

the Code and the subsequent history, therefore, belie any arguments of the Code's

exclusivity.

This Court specifically contemplated that the bankruptcy process, through an

adversary proceeding, could be used to bring an FDCPA claim on time-barred

debt.  In dicta in *Covert*, the Court noted that, "[t]he Plaintiffs could also have

brought their affirmative claims for damages"—in that case, claims under the

FDCPA—"during the bankruptcy process."  *Covert*, 779 F.3d at 248.  The Court

should extend that view now.

### b.  The FDCPA and the Bankruptcy Code Provide Complementary Remedies

"When two federal statutes address the same subject in different ways, the

right question is whether one implicitly repeals the other -- and repeal by

implication is a rare bird indeed."  *Randolph*, 368 F.3d at  730.  The *Randolph*

Court described the distinctions between the statutes as "operational differences"

that "do not . . . add up to irreconcilable conflict" but rather, create an "overlap . . .

each with coverage that the other lacks."  *Id.* at 730-31.[17]  "When two statutes

---

[17] The *Randolph* analysis has been widely adopted to harmonize the FDCPA and
the Bankruptcy Code. *See, e.g.*, *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274
(3d Cir. N.J. 2013) (following *Randolph*); *Brimmage v. Quantum3 Group LLC*,
523 B.R. 134, 142 (Bankr. N.D. Ill. 2015) ("compliance with the FDCPA and

complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful*, 134 S.Ct. at 2238.

Indeed, the Supreme Court has explicitly held that statutes may overlap, even in highly regulated areas, to provide different remedies and expertise in enforcement. In *POM Wonderful*, for example, the Supreme Court ruled that both the Food, Drug and Cosmetic Act and the Lanham Act regulated advertising the contents of a juice drink. It determined that the two statutes "complement each other in major respects, for each has its own scope and purpose" and that the Food and Drug Administration, charged with enforcement under the former statute, "does not have the same perspective or expertise in assessing market dynamics that day-to-day competitors possess" for enforcement under the latter. *Id. See also J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,* 534 U.S. 124, 144 (2001) ("[W]e can plainly regard each statute as effective because of its different requirements and protections").

---

Code is possible"); *In re Seak*, 2015 Bankr. LEXIS 490, at *7 (finding no preclusion); *Marshall v. PNC Bank, N.A.* 491 B.R. 217, 227 (Bankr. S.D. Ohio 2012) (following *Randolph*); *Rogers v. B-Real, L.L.C.*, 391 B.R. 317, 326 (Bankr. M.D. La. 2008) (following the Randolph analysis and noting that "[m]ost of the opinions concluding that the Bankruptcy Code precludes an action under the FDCPA pre-date *Randolph*"). *See also In re Jones*, No. 09-14499-BFK2011, Bankr. LEXIS 4083, at *3 (Bankr. E.D. Va. Oct. 21, 2011) (adopting the *Randolph* analysis to find jurisdiction in a case involving the Fair Credit Reporting Act).

The FDCPA and the Bankruptcy Code are similarly complementary: the objection procedure in the Bankruptcy Code provides a means to block those time-barred claims that the trustee, attorney, and/or debtor happens to spot.  Rule 9011 gives bankruptcy judges the power to impose sanctions in those same instances, with any damage awards or attorney's fees resting solely in the discretion of the court.  *See In re Sekema*, 523 B.R. 651, 654 (Bankr. N.D. Ind. 2015) (imposing sanctions where the "Debtors' statute of limitations defense . . . was blindingly obvious").  The sanctions provision indicates the disfavor in which the bankruptcy court and Code hold the filing of frivolous proofs of claim.

Nonetheless, with guaranteed damages and attorney's fees for successful suits, the FDCPA, provides an affirmative incentive to debtors and their attorneys, to root out time-barred proofs of claim on stale debt and, as a result, has a stronger deterrent effect on debt collectors.  Moreover, it compensates debtors and their counsel for the unnecessary, time-consuming process of filing an objection to a claim that should never have been filed.  By giving private attorneys more power to police misbehavior, the FDCPA helps the Bankruptcy Courts protect the integrity of their system and can stem the tide of time-barred proofs of claim that exploit the weaknesses of that system.

### c. Compliance with Both Statutes Causes No Conflict

"An implied repeal will only be found where provisions in two statutes are in *irreconcilable* conflict." *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) (internal quotation marks and alterations omitted, emphasis supplied). The *Randolph* Court concluded that "[i]t is easy to enforce both statutes, and any debt collector can comply with both simultaneously." *Id.* at 730. No "right" to file a proof of claim exists under the Bankruptcy Code that would present any obstacle to compliance with both statutes.

### i. Filing Proofs of Claim Is Optional Under the Bankruptcy Code

As an initial matter, the terms of the Bankruptcy Code itself use only permissive language: "A creditor or an indenture trustee *may* file a proof of claim." 11 U.S.C. § 501(a); *see also Donnerson*, 2015 U.S. Dist. LEXIS 40457, at *13 ("[i]n reality, filing a claim in bankruptcy is an entirely discretionary decision"). As with most things in the law, however, simply because one may do something does not mean one has the legal right to do so in all circumstances. Restrictions apply, as set forth not only in the FDCPA but in the Bankruptcy Code.

Atlas has the similar "right" to file suits on time-barred debts in state court, but that would, as it should here, subject it to liability under the FDCPA. Any alleged conflict, therefore, "is a problem of Defendants' own making rather than an irreconcilable tension between the two statutes." *Donnerson*, 2015 U.S. Dist.

LEXIS 40457, at *13.  If Atlas "simply refrain[ed] from filing claims on time-barred debts in the first place, just as they must refrain from filing collection suits on time-barred debts," the entire argument would evaporate.  *Id.*

### ii.  The Code Does Not Permit Claims to Which the Trustee Must Object

Indeed, the Bankruptcy Code actually prohibits the filing proofs of claim where the creditor knows they are time-barred.  The Code *requires* trustees to object to unenforceable claims.  11 U.S.C. § 704(a)(5).  It would be nonsensical to allow the deliberate filing of an unenforceable proof of claim in one provision then immediately require the trustee to object to it.  This Court should not infer that Congress intended to create make-work for the trustees.  The trustee is meant to be a gatekeeper against those who do not follow the mandates of the statute.  Reading the two provisions of the Code together, if the claim is objectionable, its filer must not have followed the rules.  Though improper claims reach the trustee, the statute does not actually *permit* them.

### iii.  The Bankruptcy Rules Provide Sanctions for Knowingly Unenforceable Filings

In addition, Rule 9011(b) more directly addresses improper filings.  That rule requires that "the claims, defenses, and other legal contentions" in all filings be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  Fed. R.

Bankr. P. 9011(b).  The age and statute of limitations on a debt do not amount to "nonfrivolous argument," nor does 11 U.S.C. § 502(b)(1)'s provision for objection to such unenforceable claims.  Noting that "[a] third grader could do the math," the court in *In re Sekema* imposed sanctions because neither "claimant undertook any investigation into the obvious statute of limitations defense to the claims they each filed, much less a reasonable one." 523 B.R. at 654.  The sanctions provision thus clearly evidences the Bankruptcy Code's negative view of the pursuit of stale debt. As discussed in Section D.2.b., *supra*, however, Rule 9011 is insufficient to stop the abusive practices of debt collectors.

Filing a proof of claim violates both the Bankruptcy Code and the FDCPA. No conflict, and no preclusion arises from Atlas' willful disregard of both statutes.

### E.     The Bankruptcy Code Does Not Preempt the MCDCA

Though the analysis for preclusion is less formal than that for preemption, the same reasons that indicate that preclusion does not apply weigh equally heavily in favor of applying the MCDCA.  Preemption may take multiple forms: (1) express; (2) occupation of the entire field by federal law; or (3) implied, either by conflict or because the state statute represents an obstacle to the effectiveness of the federal one.  *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372-73 (2000).  For the same reasons stated above, the Bankruptcy Code does not preempt

the MCDCA's debt collector provision.[18]

### 1. The Bankruptcy Code Does Not Expressly Preempt the MCDCA

"If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point" since the passage of the modern Bankruptcy Code in 1978. *Wyeth v. Levine*, 555 U.S. 555, 574 (2009). Though the Bankruptcy Code addresses select state law issues, it is silent as to a general preemption. *See, e.g.*, 11 U.S.C. § 524(c) (relating to reaffirmation of contracts). In the absence of an explicit statement preempting state consumer debt laws, no express preemption exists.

### 2. The Bankruptcy Code Does Not Occupy the Entire Field

Congress specifically contemplated that a statute other than the Bankruptcy Code—namely, the FDCPA—would regulate debt collection.[19] Moreover, in granting jurisdiction to bankruptcy courts for non-core proceedings, Congress contemplated the existence of matters "arising in or related to a case under title 11" that did not directly fall under the Bankruptcy Code itself. 28 U.S.C. § 157(a). *See also Randolph v. IMBS, Inc.*, 368 F.3d 726, 731 (7th Cir. 2004) (Bankruptcy Code is not "comprehensive"). Indeed, the area of debt collection practices, while it may

---

[18] The MCDCA, unlike the FCDPA, also covers creditors who are not debt collectors. Md. Code Ann. Com. Law § 14-201(b). This case addresses the MCDCA only as it relates to debt collectors.

[19] The FDCPA itself contains no broad provisions preempting state law.

overlap with bankruptcy, is of widespread state concern, with many states enforcing their own fair debt collection statutes. *See, e.g.*, Colo. Rev. Stat. §§ 12-14-101, *et seq.*; Ga. Code Ann. §§ 7-3-1, *et seq.*; La. Rev. Stat. Ann. § 9:3562. There is, accordingly, no field preemption. *See Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962, 967 (8th Cir. Iowa 1999) (rejecting field preemption of Bankruptcy Code for state debt collection law violation involving legal communications).

### 3.      The MCDCA Does Not Conflict with the Bankruptcy Code

The MCDCA is the state counterpart of the FDCPA. The MCDCA uses language slightly more specific to the circumstances at bar than that of the FDCPA, prohibiting debt collectors from "claim[ing] or attempt[ing] or threaten[ing] to enforce a right with knowledge that the right does not exist" or with reckless disregard as to the falsity of the existence of the right." Md. Code Ann. Com. Law § 14-202(8) (West 2013); *Kouabo*, 336 F. Supp. 2d at 475. The substantive requirements to comply with both the FDCPA and the MCDCA are identical as applied to this case: debt collectors must refrain from filing proofs of claim on time-barred debt. As discussed above with the FDCPA, the Bankruptcy Code does not allow such filings any more than the MCDCA does. *See* Section D.2.c, *supra*. No bar, therefore, exists to complying with both statutes, and no conflict mandates preemption.

Nor does the MCDCA "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines* v. *Davidowitz,* 312 U.S. 52, 67 (1941). As discussed, the Bankruptcy Code has no tolerance for frivolous claims and *requires* the trustee to object to unenforceable claims like those routinely filed by Atlas. *See* Fed. R. Bankr. P. 9011(b); 11 U.S.C. § 707(a)(5). The Bankruptcy Code itself, however, is not adequately equipped for the recent innovations of debt buyers seeking to game the system. Thus, rather than being an obstacle, the MCDCA, like the FDCPA, provides an additional and necessary tool for accomplishing the "full purposes and objectives of Congress" to protect both debtors and creditors. *Hines*, 312 U.S. at 67.

## VI.    Conclusion

For the foregoing reasons, the bankruptcy court's judgment should be reversed, and the case should be remanded for further proceedings.

## VII.   Request for Oral Argument

The questions presented in this appeal are ones of increasing prevalence and significance. Beginning in the fall of 2014, Atlas filed proofs of claim in at least three other proceedings before this Bankruptcy Court for the District of Maryland that led to similar Adversary Proceedings. *See Terrell v. Atlas Acquisitions, LLC*, No. 15-00107-JS; *Sewell v. Atlas Acquisitions, LLC*, No. 15-00112-PM; and

*Morrison v. Atlas Acquisitions, LLC*, No. 15-00080-NVA. Atlas is not alone in inundating bankruptcy courts with this type of predatory claim. *See Feggins v LVNV Funding, LLC*, No. 14-1049, 2014 Bankr. LEXIS 5040 (Bankr. M.D. Ala. Dec. 16, 2014) (refusing to stay fourteen cases against LVNV alleging FDCPA violations for filing time-barred proofs of claim).

To date, two circuits have directly addressed the applicability of the FDCPA to proofs of claims on time-barred debt. *Compare Crawford v LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014) (allowing FDCPA claims) *with Gatewood v. CP Med., LLC*, 533 B.R. 905 (B.A.P. 8th Cir. 2015) (holding that the FDCPA does not apply to complete and accurate proofs of claim on time-barred debt but indicating that it may apply in other situations). Similar cases are pending before multiple other Courts of Appeals. *See Garfield v. Ocwen*, No. 15-527 (2d Cir.); *Torres v. Calvary SPV I*, No. 15-2132 (3d Cir.); *Owens v. LVNV Funding, LLC*, No. 15-2044 (7th Cir.); *Johnson v. Midland Funding, LLC*, No. 15-11240-E (11th Cir.).

The *Crawford* Court called the trend of debt buyers filing proofs of claim on time-barred debt "[a] deluge [sweeping] through U.S. bankruptcy courts of late." *Crawford*, 758 F.3d at 1256. Oral argument is warranted to allow full discussion of this widespread and significant issue.

43

Respectfully Submitted,

  /s/ *Courtney L. Weiner*
Courtney L. Weiner
Morgan W. Fischer
LAW OFFICES OF MORGAN FISHER LLC
Suite 700
700 12th Street
Washington, DC 20005
Email: courtneyweineresq@gmail.com
Email: mwf@morganfisherlaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

    The word count of this brief is <u>10,802</u>.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using <u>MicroSoft Word, Times New Roman, 14 point</u>.

October 20, 2015

<u> /s/ *Courtney L. Weiner* </u>
Courtney L. Weiner

45

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this October 20, 2015, filed the required copies of the foregoing Brief of Appellant in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Alan Craig Hochheiser
BUCKLEY KING LPA
600 Superior Avenue East
1400 5th 3rd Center
Cleveland, OH 44114
Email: hochheiser@buckleyking.com

Donald S. Maurice, Jr.
MAURICE WUTSCHER, LLP
Suite 2007
5 Walter East Foran Boulevard
Flemington, NJ 08822
Email: dmaurice@mauricewutscher.com

   /s/ *Courtney L. Weiner*
Courtney L. Weiner

# ADDENDUM

1. Fair Debt Collection Practices Act, Report of the Senate Committee on Banking, Housing, and Urban Affairs, S. Rep. No. 95-382 (1977) (excerpts) ........................................................................... Add-1

2. Bankruptcy Act of 1898, Pub. L. No. 55-541, § 57(a), 30 Stat. 544, 560 (1898) (excerpts) ........................................................................... Add-6

3. Bankruptcy Act of 1938, Pub. L. No. 75-696, § 57(a), 52, Stat. 840, 866 (1938) (excerpts) ........................................................................... Add-8

4. Bankruptcy Law Revision, Report of the House Committee on the Judiciary, H. Rep. No. 95-595 (1978) (excerpts) ....................................................... Add-10

Calendar No. 350

| 95th Congress 1st Session | SENATE | REPORT No. 95–382 |
| --- | --- | --- |

# FAIR DEBT COLLECTION PRACTICES ACT

REPORT

OF THE

## COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS UNITED STATES SENATE

TO ACCOMPANY

## H.R. 5294

together with

## ADDITIONAL VIEWS



AUGUST 2 (legislative day, JULY 19), 1977.—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1977

89–010

Add-1

# Calendar No. 350

| | | |
|---|---|---|
| 95TH CONGRESS<br>*1st Session* | SENATE | REPORT<br>No. 95–382 |

## FAIR DEBT COLLECTION PRACTICES ACT

―――――――――

AUGUST 2 (legislative day, JULY 19), 1977.—Ordered to be printed

―――――――――

Mr. RIEGLE, from the Committee on Banking, Housing, and
Urban Affairs, submitted the following

# REPORT

[To accompany H.R. 5294]

The Committee on Banking, Housing, and Urban Affairs, to which
was referred the bill (H.R. 5294) to amend the Consumer Credit
Protection Act to prohibit abuses by debt collectors, having considered
same, reports favorably thereon with an amendment and recommends
that the bill as amended do pass.

### HISTORY OF THE LEGISLATION

On May 12 and 13, 1977, the Consumer Affairs Subcommittee held
hearings on four bills to regulate debt collection practices: S. 656,
introduced by Senator Biden; S. 918, introduced by Senator Riegle;
S. 1130, introduced by Senator Garn for himself and Senators Schmitt
and Tower; and H.R. 5294, passed by the House of Representatives
on April 4, 1977. After these hearings and before markup by the
committee, Senator Riegle offered a composite bill, designated Com-
mittee Print No. 1, as a substitute for S. 918.

The Committee met in open markup sessions on June 30 and
July 26, 1977, and approved Committee Print No. 1, with amendments,
by voice vote. The committee substituted the text of its bill for that
of H.R. 5294, which is herewith reported without objection.

### NATURE AND PURPOSE OF THE BILL

This legislation would add a new title to the Consumer Credit
Protection Act entitled the Fair Debt Collection Practices Act. Its
purpose is to protect consumers from a host of unfair, harassing, and
deceptive debt collection practices without imposing unnecessary

(1)

2

restrictions on ethical debt collectors. This bill was strongly supported by consumer groups, labor unions, State and Federal law enforcement officials, and by both national organizations which represent the debt collection profession, the American Collectors Association and Associated Credit Bureaus.

### NEED FOR THIS LEGISLATION

The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem. Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

Debt collection by third parties is a substantial business which touches the lives of many Americans. There are more than 5,000 collection agencies across the country, each averaging 8 employees. Last year, more than $5 billion in debts were turned over to collection agencies. One trade association which represents approximately half of the Nation's independent collectors states that in 1976 its members contacted 8 million consumers.

Hearings before the Consumer Affairs Subcommittee revealed that independent debt collectors are the prime source of egregious collection practices. While unscrupulous debt collectors comprise only a small segment of the industry, the suffering and anguish which they regularly inflict is substantial. Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them. Collection agencies generally operate on a 50-percent commission, and this has too often created the incentive to collect by any means.

The primary reason why debt collection abuse is so widespread is the lack of meaningful legislation on the State level. While debt collection agencies have existed for decades, there are 13 States, with 40 million citizens, that have no debt collection laws. These States are Alabama, Delaware, Georgia, Kansas, Kentucky, Mississippi, Missouri, Montana, Ohio, Oklahoma, Rhode Island, South Carolina, and South Dakota. Another 11 States (Alaska, Arkansas, Indiana, Louisiana, Nebraska, New Jersey, Oregon, Pennsylvania, Utah, Virginia and Wyoming), with another 40 million citizens, have laws which in the committee's opinion provide little or no effective protection. Thus, 80 million Americans, nearly 40 percent of our population, have no meaningful protection from debt collection abuse.

While 37 States and the District of Columbia do have laws regulating debt collectors, only a small number are comprehensive statutes which provide a civil remedy. As an example of ineffective State laws, of the 16 states which regulate by debt collection boards, 12 require by law that a majority of the board be comprised of debt collectors.

The Committee has found that collection abuse has grown from a State problem to a national problem. The use of WATS lines by debt collectors has led to a dramatic increase in interstate collections. State

S.R. 382

**Add-3**

3

law enforcement officials have pointed to this development as a prime reason why federal legislation is necessary, because State officials are unable to act against unscrupulous debt collectors who harass consumers from another State.

One of the most frequent fallacies concerning debt collection legislation is the contention that the primary beneficiaries are "deadbeats." In fact, however, there is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is miniscule. Prof. David Caplovitz, the foremost authority on debtors in default, testified that after years of research he has found that only 4 percent of all defaulting debtors fit the description of "deadbeat." This conclusion is supported by the National Commission on Consumer Finance which found that creditors list the willful refusal to pay as an extremely infrequent reason for default.

The Commission's findings are echoed in all major studies: the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

The committee believes that the serious and widespread abuses in this area and the inadequacy of existing State and Federal laws make this legislation necessary and appropriate.

## EXPLANATION OF THE LEGISLATION

*Scope of the act*

This bill applies only to debts contracted by consumers for personal, family, or household purposes; it has no application to the collection of commercial accounts.

The committee intends the term "debt collector," subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors. The requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business. The definition would include "reciprocal collections" whereby one creditor regularly collects delinquent debts for another pursuant to a reciprocal service agreement, unless otherwise excluded by the act.

The term debt collector is not intended to include the following: "in house" collectors for creditors so long as they use the creditor's true business name when collecting; Government officials, such as marshals and sheriffs, while in the conduct of their official duties; process servers; nonprofit consumer credit counseling services which assist consumers by apportioning the consumer's income among his creditors pursuant to a prior arrangement; and attorneys-at-law while acting in that capacity. One subsidiary or affiliate which collects debts for another subsidiary or affiliate is not a "debt collector" so long as the collecting affiliate collects only for other related entities and its principal business is not debt collection.

Finally, the committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; mortgage service com-

S.R. 382

panies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing; and the collection of debts owed to a creditor when the collector is holding the receivable account as collateral for commercial credit extended to the creditor.

*Obtaining location information*

While this legislation strongly protect's the consumer's right to privacy by prohibiting a debt collector from communicating the consumer's personal affairs to third persons, the committee also recognizes the debt collector's legitimate need to seek the whereabouts of missing debtors. Accordingly, this bill permits debt collectors to contact third persons for the purpose of obtaining the consumer's location. In seeking this information, however, the debt collector must observe certain guidelines: he may not state that the consumer owes a debt nor contact third persons more than once unless necessary to obtain complete information. In addition, a debt collector may not place language or symbols on mail to third persons indicating that the mail relates to debt collection nor continue to contact third parties after learning the name and address of the consumer's attorney, unless the attorney fails to respond to the debt collector's communications.

*Prohibited practices*

This legislation expressly prohibits a host of harassing, deceptive, and unfair debt collection practices. These include: threats of violence; obscene language; the publishing of "shame lists;" harassing or anonymous telephone calls; impersonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; and misusing postdated checks. In addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.

In addition, this legislation adopts an extremely important protection recommended by the National Commission on Consumer Finance and already the law in 15 States: it prohibits disclosing the consumer's personal affairs to third persons. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs.

*Validation of debts*

Another significant feature of this legislation is its provision requiring the validation of debts. After initially contacting a consumer, a debt collector must send him or her written notice stating the name of the creditor and the amount owed. If the consumer disputes the validity of the debt within 30 days, the debt collector must cease collection until he sends the consumer verification.

This provision will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. Since the current practice of most debt collectors is to send similar information to consumers, this provision will not result in additional expense or paperwork.

S.R. 382

Appeal: 15-1945    Doc: 14    Filed: 10/20/2015    Pg: 68 of 77

amount during the fiscal year eighteen hundred and ninety-nine than they make on the appropriations arising from the revenues, including drawback certificates, of said District.

Approved, June 30, 1898.

---

July 1, 1898.

**CHAP. 541.—An Act** To establish a uniform system of bankruptcy throughout the United States.

Bankruptcy.
Uniform system established.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## CHAPTER I.

Definitions.

### DEFINITIONS.

SECTION 1. MEANING OF WORDS AND PHRASES.—a The words and phrases used in this Act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows: (1) "A person against whom a petition has been filed" shall include a person who has filed a voluntary petition; (2) "adjudication" shall mean the date of the entry of a decree that the defendant, in a bankruptcy proceeding, is a bankrupt, or if such decree is appealed from, then the date when such decree is finally confirmed; (3) "appellate courts" shall include the circuit courts of appeals of the United States, the supreme courts of the Territories, and the Supreme Court of the United States; (4) "bankrupt" shall include a person against whom an involuntary petition or an application to set a composition aside or to revoke a discharge has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt; (5) "clerk" shall mean the clerk of a court of bankruptcy; (6) "corporations" shall mean all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships, and shall include limited or other partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association; (7) "court" shall mean the court of bankruptcy in which the proceedings are pending, and may include the referee; (8) "courts of bankruptcy" shall include the district courts of the United States and of the Territories, the supreme court of the District of Columbia, and the United States court of the Indian Territory, and of Alaska; (9) "creditor" shall include anyone who owns a demand or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy; (10) "date of bankruptcy," or "time of bankruptcy," or "commencement of proceedings," or "bankruptcy," with reference to time, shall mean the date when the petition was filed; (11) "debt" shall include any debt, demand, or claim provable in bankruptcy; (12) "discharge" shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by this Act; (13) "document" shall include any book, deed, or instrument in writing; (14) "holiday" shall include Christmas, the Fourth of July, the Twenty-second of February, and any day appointed by the President of the United States or the Congress of the United States as a holiday or as a day of public fasting or thanksgiving; (15) a person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts; (16) "judge" shall mean a judge of a court of bankruptcy, not including the referee; (17) "oath" shall include affirmation; (18) "officer" shall include clerk, marshal, receiver, referee, and trustee, and the imposing of a duty upon or the forbidding of an

Side notes: A person against whom a petition has been filed. Adjudication. Appellate courts. Bankrupt. Clerk. Corporations. Court. Courts of bankruptcy. Creditor. Date of bankruptcy. Debt. Discharge. Document. Holiday. Insolvency. Judge. Oath. Officer.

**Add-6**

560     FIFTY-FIFTH CONGRESS. Sess. II. Ch. 541. 1898.

Call of meeting by court.

e The court shall call a meeting of creditors whenever one-fourth or more in number of those who have proven their claims shall file a written request to that effect; if such request is signed by a majority of such creditors, which number represents a majority in amount of such claims, and contains a request for such meeting to be held at a designated place, the court shall call such meeting at such place within thirty days after the date of the filing of the request.

Final meeting.

f Whenever the affairs of the estate are ready to be closed a final meeting of creditors shall be ordered.

Voters at meetings.

SEC. 56. VOTERS AT MEETINGS OF CREDITORS.—a Creditors shall pass upon matters submitted to them at their meetings by a majority vote in number and amount of claims of all creditors whose claims have been allowed and are present, except as herein otherwise provided.

Secured creditors.

b Creditors holding claims which are secured or have priority shall not, in respect to such claims, be entitled to vote at creditors' meetings, nor shall such claims be counted in computing either the number of creditors or the amount of their claims, unless the amounts of such claims exceed the values of such securities or priorities, and then only for such excess.

Proof of claims, what to consist of.

SEC. 57. PROOF AND ALLOWANCE OF CLAIMS.—a Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so what, securities are held therefor, and whether any, and. if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor.

Production of instrument on which claim is founded.

b Whenever a claim is founded upon an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim. If such instrument is lost or destroyed, a statement of such fact and of the circumstances of such loss or destruction shall be filed under oath with the claim. After the claim is allowed or disallowed, such instrument may be withdrawn by permission of the court, upon leaving a copy thereof on file with the claim.

Filing of claims for allowance.

c Claims after being proved may, for the purpose of allowance, be filed by the claimants in the court where the proceedings are pending or before the referee if the case has been referred.

Allowance of claims.

d Claims which have been duly proved shall be allowed, upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest, or their consideration be continued for cause by the court upon its own motion.

Secured creditors.

e Claims of secured creditors and those who have priority may be allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities or priorities, but shall be allowed for such sums only as to the courts seem to be owing over and above the value of their securities or priorities.

Objections to claims, determination of.

f Objections to claims shall be heard and determined as soon as the convenience of the court and the best interests of the estates and the claimants will permit.

Preferred creditors.

g The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences.

Determination of value of securities of secured creditors.

h The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.

Claims secured by individual undertaking of another, etc.

i Whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor.

840        PUBLIC LAWS—CHS. 567, 575—JUNE 22, 1938      [52 STAT.

General of the Navy, or as Major General Commandant of the Marine Corps, and is retired after completion of such service while serving in a lower rank or grade, may, in the discretion of the President, be retired with the rank, pay, and allowances authorized by law for the highest grade or rank held by him as such Chief of Naval Operations, Chief of Bureau, Judge Advocate General, or Major General Commandant: *Provided,* That the President in his discretion may extend the privileges herein authorized to such officers as have heretofore been retired and who satisfy the foregoing conditions: *Provided further,* That no increase provided herein in retired pay shall be held to have accrued prior to the passage of this Act.

*Previous. Extension of privileges to such officers heretofore retired.*

*No increase in prior retired pay.*

Approved, June 22, 1938.

[CHAPTER 575]

*June 22, 1938 [H. R. 8046] [Public, No. 696]*

AN ACT

To amend an Act entitled "An Act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898, and Acts amendatory thereof and supplementary thereto; and to repeal section 76 thereof and all Acts and parts of Acts inconsistent therewith.

*Bankruptcy Act of 1898, amendments. 30 Stat. 544; 32 Stat. 800; 36 Stat. 842; 47 Stat. 1467; 48 Stat. 911. 11 U. S. C.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That sections 1 to 11, inclusive; 14; 15; 17 to 29, inclusive; 31; 32; 34; 35; 37 to 42, inclusive; 44 to 53, inclusive; and 55 to 72, inclusive, of an Act entitled "An Act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898, as amended, are hereby amended; and sections 12, 13, 73, 74, 77A, and 77B are hereby amended and incorporated as chapters X, XI, XII, XIII, and XIV; said amended sections to read as follows:

*Chapter I—Definitions.*

"CHAPTER I—DEFINITIONS

*Meaning of words and phrases.*

"SECTION 1. MEANING OF WORDS AND PHRASES.—The words and phrases used in this Act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows:

*"A person against whom a petition has been filed."*

"(1) 'A person against whom a petition has been filed' shall include a person who has filed a voluntary petition;

*"Adjudication."*

"(2) 'Adjudication' shall mean a decree that a person is a bankrupt;

*"Appellate courts."*

"(3) 'Appellate courts' shall include the circuit courts of appeals of the United States, the United States Court of Appeals of the District of Columbia, and the Supreme Court of the United States;

*"Bankrupt."*

"(4) 'Bankrupt' shall include a person against whom an involuntary petition or an application to revoke a discharge has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt;

*"Bona-fide purchaser."*

"(5) 'Bona-fide purchaser' shall include a bona-fide encumbrancer or pledgee and the transferee, immediate or mediate, of any of them;

*"Clerk."*

"(6) 'Clerk' shall mean the clerk of a court of bankruptcy;

*"Conceal."*

"(7) 'Conceal' shall include secrete, falsify, and mutilate;

*"Corporation."*

"(8) 'Corporation' shall include all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships and shall include partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association, joint-stock companies, unincorporated companies and associations, and any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument;

Add-8

Claims of $50 or less.

"c. Claims of $50 or less shall not be counted in computing the number of creditors voting or present at creditors' meetings, but shall be counted in computing the amount.

Proof and allowance of claims.

"SEC. 57. PROOF AND ALLOWANCE OF CLAIMS.—a. A proof of claim shall consist of a statement under oath, in writing and signed by a creditor, setting forth the claim; the consideration therefor; whether any and, if so, what securities are held therefor; and whether any and, if so, what payments have been made thereon; and that the claim is justly owing from the bankrupt to the creditor.

Production of instrument on which claim is founded.

"b. Whenever a claim is founded upon an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim. If such instrument is lost or destroyed, a statement of such fact and of the circumstances of such loss or destruction shall be filed under oath with the claim. After the claim is allowed or disallowed, such instrument may be withdrawn by permission of the court upon leaving a copy thereof on file with the claim.

Filing of proofs of claims.

"c. Proofs of claim may, for the purpose of allowance, be filed by the claimants in the court of bankruptcy where the proceedings are pending or before the referee if the case has been referred.

Allowance.

"d. Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion:

Proviso. Unliquidated or contingent claims.

*Provided, however,* That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act.

Secured, etc., creditors.

"e. Claims of secured creditors and those who have priority may be temporarily allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities or priorities, but shall be thus temporarily allowed for such sums only as to the courts seem to be owing over and above the value of their securities or priorities.

Objections to claims, determination of.

"f. Objections to claims shall be heard and determined as soon as the convenience of the court and the best interests of the estates and the claimants will permit.

Void or voidable preferences, etc.

"g. The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this Act, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances.

Determination of value of securities held by secured creditors.

"h. The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.

Court supervision, etc.

Such determination shall be under the supervision and control of the court.

Claim secured by individual undertaking of another.

"i. Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove and file such claim, such person may do so in the creditor's name and, if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor.

| 95TH CONGRESS 1st Session } | HOUSE OF REPRESENTATIVES | { REPORT No. 95–595 |
| --- | --- | --- |

# BANKRUPTCY LAW REVISION

---

# REPORT

OF THE

## COMMITTEE ON THE JUDICIARY

together with

## SEPARATE, SUPPLEMENTAL, AND SEPARATE ADDITIONAL VIEWS

[Including Cost Estimate of the Congressional Budget Office]

[To accompany H.R. 8200]



SEPTEMBER 8, 1977.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

---

**U.S. GOVERNMENT PRINTING OFFICE**

94-735                      WASHINGTON : 1977

nection with bankruptcy.[36] Indeed, it could not be contended otherwise without challenging the jurisdictional provisions of the present Bankruptcy Act. Section 2a(7) of the Act confers jurisdiction on the courts of bankruptcy over the determination of controversies "in relation to" the estates of bankrupts "except as herein otherwise provided." By clear implication § 23b recognizes that courts of bankruptcy have jurisdiction of any action brought there by a receiver or trustee "by consent of the defendant." Since consent of the parties cannot create jurisdiction of the subject matter in a court which has not been vested with it by a valid legislative act, Congress may be said to have given comprehensive jurisdiction to the bankruptcy courts under the Act with respect to all litigation arising from the administration of the estate of any eligible or amenable debtor, while in certain situations limiting the exercise of this jurisdiction to accommodate the convenience of adversaries of a receiver or trustee.[37]

The dichotomy of jurisdiction adopted in 1898 and contained in current law was a change from former bankruptcy acts.[310] It was originally adopted primarily for reasons of convenience of the parties. In 1898, federal courts were not so easily accessible as they are today. Communications and travel were more difficult, and State courts were more dispersed and easier to reach. Today, the rationale for withholding jurisdiction from the bankruptcy courts no longer exists, and the problems generated by limited jurisdiction demand a change in any comprehensive revision of the bankruptcy laws.

The hearings before the Subcommittee on Civil and Constitutional Rights confirmed the findings of the Bankruptcy Commission relative to the problems created by the limited jurisdiction of the bankruptcy court. Witness after witness argued in favor of increased jurisdiction.[311] The time for change in this aspect of bankruptcy law has come. It is essential to a healthy bankruptcy system.

### B. JURISDICTION UNDER H.R. 8200

H.R. 8200 grants the bankruptcy courts broad and complete jurisdiction over all matters and proceedings that arise in connection with bankruptcy cases.[312] Possession of the rest that is the subject of a par-

---

[36] See, e.g., Schumacher v. Beeler, 293 U.S. 367 (1934); National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U.S. 594, 652 n. 3 (1949); Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 430 (1924).

"It is well understood that Congress might, under its bankruptcy power, throw into the bankruptcy courts all litigation to which receivers or trustees in bankruptcy properly become parties. Under the Bankruptcy Acts of 1841 and 1867 Congress gave federal courts jurisdiction over all suits between assignees in bankruptcy and adverse claimants. There is no indication that the much more restricted provisions of the Act of 1898 are attributable to constitutional doubts. Local distrust of federal interference with existing practices and a less provincial concern with overloading the federal courts are more relevant." MacLachlan § 219, at 245. See also 1 H. Remington, Bankruptcy § 13, at 27–28 (5th ed. 1950); Mussman & Riesenfeld, *Jurisdiction in Bankruptcy*, 13 Law & Contemp. Prob. 88, 89 (1948).

[37] MacLachlan § 194, at 207, § 219, at 246.

[310] Act of Mar. 2, 1867, c. 176, §§ 1, 2, 14 Stat. 517–18; Act of Aug. 19, 1841, c. 9, § 8, 5 Stat. 440, 446; Schumacher v. Beeler, 293 U.S. 367 (1935); Bardes v. Hawarden Bank, 178 U.S. 524 (1900); 2 COLLIER ON BANKRUPTCY ¶23.01 (1976).

[311] *Hearings*, pt. 1, at 144–45, 178–80, 238–39, 315, 439, 538–40, 584; pt. 2, at 1022; pt. 3, at 1748.

[312] H.R. 8200 § 243 (proposed 28 U.S.C. 1471(b)).

49

ticular proceeding will not longer be relevant. The bankruptcy courts will have in personam jurisdiction over all proceedings, whether or not involving a specific item of property. All matters arising under title 11, or arising under or related to cases under title 11 will be within the jurisdiction of the bankruptcy court, including proceedings to which the trustee is a party, proceedings to which the debtor is a party if the outcome of the proceeding will have an impact on the case (such as determination of exemptions,[313] determination of dischargeability of debts,[314] liquidation of non-dischargeable debts,[315] and determination of any right granted under title 11), and all proceedings involving the administration of the case. The forum shopping and jurisdictional litigation that have plagued the bankruptcy system, the unfairness to defendants from "jurisdiction by ambush," and the dissipation of assets and the expense associated with bifurcated jurisdiction will be eliminated by the jurisdiction proposed by this bill.

The broad jurisdiction granted to the bankruptcy courts under the bill is coupled with other changes proposed in current bankruptcy law and practice. The jurisdictional change would not be appropriate without them. The two most important are the change in status of the bankruptcy judges, and the separation of the administrative and judicial functions of the bankruptcy judge. The first is necessary in order to insure high caliber applicants for the position of bankruptcy judge. The jurisdiction proposed by the bill is a powerful one, and should not be granted unless there is some assurance that the judges exercising the jurisdiction will at least as competent as the judges that exercise other Federal jurisdiction. To require litigants that may now litigate before true judges to come into the bankruptcy court is fair only if the judges of the bankruptcy court are equal to the task of deciding the highly complex issues that arise in connection with bankruptcy cases. "The importance and difficulty of issues coming before the bankruptcy judges will be entirely comparable to those coming before United States district court judges and judges of state courts of general jurisdiction."[316]

The second change is essential if bankruptcy courts are to become fair and unbiased fora. This change is discussed in detail in chapter 2. A bankruptcy judge that participates on one side of a case cannot be expected to resolve disputes fairly, no matter how well-intentioned he is. Without the separation of administrative and judicial functions proposed by the bill, an expansion of jurisdiction would work to the severe disadvantage of all adverse litigants against the estate.[317]

The Bankruptcy Commission was especially strong in its statement of the need for separation of the administrative and judicial functions as a minimum for fairness in the bankruptcy courts, and as a concomitant of the grant of full jurisdiction to dispose of bankruptcy cases:[318]

> A more substantial factor relates to the effect of the referee's involvement in administering an estate on his ability to act

---

[313] See Lockwood v. Exchange National Bank, 190 U.S. 294 (1903) ; Commission Report, pt. I, at 91.
[314] See sec. 17c, 11 U.S.C. 35c (1970).
[315] See id.
[316] Commission Report, pt. I, at 95.
[317] See Hearings, pt. 3 at 1748.
[318] Commission Report, pt. I, at 93–94.

judicially in resolving any controversies which arise.[42] After a referee has read the debtor's petition, schedules, and statement of affairs, and has examined him and others at the first meeting of creditors, it is obviously difficult to resolve questions arising in a proceeding to determine whether the debtor ought to be discharged or even whether a particular debt is dischargeable, without being influenced by information and impressions gained during his previous contact with the debtor and the papers in the case. When the referee has appointed, or approved the appointment of, a trustee to take charge of the property of the estate, has supervised and perhaps instructed the trustee in the performance of his duties, and has approved the trustee's choice of counsel and the initiation of an action, the referee may not appear to the trustee's adversary as one fitting the model of judicial objectivity. The problem is aggravated in metropolitan centers where there is sufficient concentration of bankruptcy business for a specialized bankruptcy bar to develop. Members of the specialized bar are a valuable source of knowledgeable and capable trustees on whom the referee is able to draw when creditors do not elect a trustee. The involvement of the referee in the administration of estates entails numerous conferences and communications that are informal and *ex parte*. The responsibility resting on a conscientious referee under the present Act is thus conducive to the development of what appears to attorneys who are not included among the specialists, to their clients, and to the public generally, as an unseemly and continuing relationship between the referee and the members of the specialist bar. He is thus vulnerable to being linked by imputation to the so-called "bankruptcy ring," which is the opprobrious label frequently given to the specialized bankruptcy bar in a community.

Without undertaking to determine whether the criticisms of referees for permitting their relationships with the bankruptcy bar to become too close are justified, the Commission believes that making an individual responsible for conduct of both administrative and judicial aspects of a bankruptcy case is incompatible with the proper performance of the judicial function. Even if a paragon of integrity were sitting on the bench and could keep his mind and feelings insulated from influences which arise from his previous official connections with the case before him and with one of the parties to it, he probably could not dispel the appearance of a relationship which might compromise his judicial objectivity. The Commission accordingly recommends that the bankruptcy judges be removed from the administration of bankrupt estates and be restricted to the performance of essentially judicial functions, that is, primarily to the resolution of disputes or issues

[42] See MacLachan, § 186, at 196–97, § 205, at 226; *Gende, Summary Jurisdiction in Bankruptcy Related to Possible Referee Disqualification*, 51 Calif. L. Rev. 755, 757–58 (1963); Katcher, *Image of the Bankruptcy Court*, 40 Ref.J. 7, 9 Treister, *supra* note 40, at 8–89.

51

involving adversary parties and matters appropriate for judicial determination.

Third, in order to insure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases, the bill codifies present case law relating to the power of abstention in particular proceedings by the bankruptcy court. Occasions arise when determination of an issue is best left to a court that decides similar issues regularly, especially if the issue is one that requires a particular expertise that the bankruptcy court does not have. For example, in *Thompson v. Magnolia Petroleum*, the Supreme Court required a bankruptcy court to defer to a State court for determination of a particularly unusual question of State real property law.[319] The power of abstention is necessary to the effective and meaningful exercise of the expanded jurisdiction granted by this bill.

The Committee also considered a different, more limited, jurisdiction for the bankruptcy courts. Under the proposal, the bankruptcy courts would retain their present jurisdiction based on possession or consent, but would also be permitted to assert jurisdiction over a proceeding if the party bringing it could demonstrate detriment to the estate from requiring the proceeding to proceed in a forum other than the bankruptcy court, such as undue delay in the administration of the case or the closing of the estate. The proposal is inadequate to alleviate the problems that exist under the current jurisdictional framework, and would generate problems of its own in its administration.

The amount of litigation over the jurisdiction of the bankruptcy court is already excessive. The proposal would add an additional ground on which parties could litigate the issue and cause delay. This would increase rather than decrease the amount of judicial time spent on jurisdiction. It would not solve the problems of "jurisdiction by ambush," but would give the bankruptcy trustee an additional weapon with which to ambush an unsuspecting defendant. These problems would arise if trustees attempted to use this new jurisdiction of the bankruptcy court. For practical reasons, however, trustees may avoid it altogether.

Presumably, an order of the bankruptcy court refusing to accept jurisdiction and, in effect, remanding the matter to another court would not be appealable, in the same manner that an order of the United States district court remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise.[320] However, an order of the district court accepting jurisdiction of a removed case and remand is correctible on appeal. Where a case is improperly accepted by the United States district court, a party having saved the point in the record, may have the error corrected on appeal after final decree below.[321] Thus, even though a trustee may win a case on the merits against a third party in the bankruptcy court, the judgment would be subject to reversal on appeal on a finding by the appellate court that the bankruptcy court erred in accepting jurisdiction of the case. The only way to avoid underlying jurisdictional uncertainty would be for

[319] 309 U.S. 478 (1940).
[320] 28 U.S.C. 1447(d) (1970). *See* H.R. 8200 § 243(a) (proposed 28 U.S.C. 1478(b)).
[321] Edrington v. Jefferson, 111 U.S. 770 (1884) ; Morgan v. Kroger Grocery & Baking Co., 96 F.2d 40 (8th Cir. 1938) ; Coburn v. Hill, 103 F. 340 (6th Cir. 1900). *See* Thermtron Products, Inc. v. Hermansforder, 423 U.S. 336 (1976).

52

the trustee to file all suits in courts other than the bankruptcy court and accept gracefully any inherent delay.

Finally, in many areas of policy, it is appropriate to leave to the courts to determine on a case-by-case basis the need for remedies. In this area, however, that kind of solution is not a solution at all, but the source of the problem that exists in the current system. The issue is one that must be resolved by a legislative finding that the current limited jurisdiction of the bankruptcy courts operates to the detriment of bankruptcy litigants, creditors, and debtors, and a legislative determination that the bankruptcy courts have the jurisdiction necessary to dispose of bankruptcy cases expeditiously.

## CONCLUSION

The bankruptcy court system continues to operate today despite an antiquated law that limits its effectiveness. The increasing burden being placed on the system demands that the system be made workable and efficient before the burden becomes intolerable. The time has come for the formal separation of the bankruptcy courts and judges from the district courts, where they have labored under serious limitations. The rights of bankruptcy litigants entitle them to no less.

Article III of the Constitution establishes the norm of a life-tenured Federal judiciary. Although the case law has permitted departure from this norm in specific instances, none of the traditional reasons advanced for such a departure apply with respect to the establishment of a bankruptcy court system. Moreover, there is a substantial doubt that a nontenured bankruptcy court could be constitutionally permitted to exercise a complete grant of the powers and jurisdiction necessary to adjudicate bankruptcy cases.

As the bankruptcy courts are recognized as an integral part of the Federal judiciary, full constitutional stature will permit equal participation within the Judicial Branch by the bankruptcy judges, and will attract the high caliber judges needed to serve in this complex and demanding area. The rights of litigants, both debtors and creditors, to a full constitutional court must also be considered. This is not [322]

> a problem of a "highly theoretical nature." Far from being "theoretical" it is intensely practical, for it deals with powers of judges . . . over vast property interests in complicated trials customarily involving the right to trial by jury.

With billions of dollars and hundreds of thousands of debtors and creditors moving through the bankruptcy courts annually, the court system should be no less than that provided other litigants in the Federal system. H.R. 7330 achieves these goals.

---

[322] Glidden Co. v. Zdanok, 370 U.S. 530, 589, 590 (1962) (Douglas, J., dissenting).