NO. 15-1945

## IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

IN RE:  CHAILLE DUBOIS

CHAILLE DUBOIS, F/K/A CHAILLE GAINES, F/K/A CANDACE DUBOIS,
F/K/A CANDACE GAINES, F/K/A CANDI GAINES, F/K/A CANDI DUBOIS;
KIMBERLY ADKINS,

*Plaintiffs - Appellants,*

v.

ATLAS ACQUISITIONS LLC,

*Defendant - Appellee.*

AND

TIMOTHY P. BRANIGAN; NANCY SPENCER GRISBY,

*Trustees,*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT
(HONORABLE THOMAS J. CATLIOTA, U.S. BANKRUPTCY JUDGE)

**REPLY BRIEF OF APPELLANTS**

Morgan W. Fisher
LAW OFFICES OF
MORGAN FISHER LLC
172 West Street
Annapolis, MD 21401
(410) 626-6111

*Counsel for Appellants*
*Chaille DuBois and Kimberly Adkins*

Courtney L. Weiner
LAW OFFICES OF
MORGAN FISHER LLC
700 12th Street, Suite 700
Washington, DC 20005
(410) 626-6111

*Counsel for Appellants*
*Chaille DuBois and Kimberly Adkins*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT ....................................................................................................... 1

I.    The Bankruptcy Code and the FDCPA Are Complementary Statutes ............. 2

      A.    The Bankruptcy Code Does Not Permit the Filing of Proofs of
            Claim on Time-Barred Debt ................................................................... 2

            1.  Time-Barred Debt is Not Enforceable .............................................. 3

                a.  Maryland Law Does Not Recognize Judicial Enforceability
                    of Time-Barred Debt ................................................................. 3

                b.  Atlas Purposefully Tricks Debtors into Reactivating Time-
                    Barred Debt .............................................................................. 4

            2.  The Bankruptcy Code's Definition of "Claim" Does Not
                Include Unenforceable Debts ........................................................... 5

            3.  The Objection Requirement of the Bankruptcy Code Confirms
                Its Bar on Unenforceable Debt ......................................................... 6

      B.    The FDCPA and the Bankruptcy Code Do Not Conflict in
            Application ............................................................................................. 7

      C.    The Bankruptcy Code Is Not Comprehensive ...................................... 9

II.   The Filing of a Proof of Claim Is an Action to Collect a Debt ....................... 11

      A.    To the Extent It Relates, Atlas Meets the Test for Application of
            the FDCPA ............................................................................................ 11

      B.    The Automatic Stay Is Irrelevant to the Applicability of the
            FDCPA .................................................................................................. 13

      C.    Authority Requires Finding the Filing of Proofs of Claim to Be
            Debt Collection ..................................................................................... 13

i

III.  The Filing of a Proof of Claim on Time-Barred Debt Violates the FDCPA ...14

    A.  Atlas Confuses the Requirements of the Bankruptcy Rules with a License ...............................................................................................15

    B.  The Bankruptcy Process Does Not Provide an Adequate Safeguard .16

        1.  Atlas Takes Advantage of Systemic Weaknesses .........................16

        2.  Atlas' Actions Serve Only Itself, Not the Bankruptcy Process .....18

CONCLUSION ......................................................................................19

CERTIFICATE OF COMPLIANCE ......................................................20

CERTIFICATE OF SERVICE ...............................................................21

ii

# TABLE OF AUTHORITIES

## CASES

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle Street P'ship,*
    526 U.S. 434 (1999)...........................................................................10

*Brimmage v. Quantum3 Group LLC,*
    523 B.R. 134 (Bankr. N.D. Ill. 2015) ..............................................14

*Crawford v. LVNV Funding, LLC,*
    758 F.3d 1254 (11th Cir. 2014) ...................................................8, 14

*Covert v. LVNV Funding, LLC,*
    *No. DKC 13-0698,* 2013 U.S. Dist. LEXIS 175651
    (D. Md. Dec. 9, 2013).......................................................................13

*Donnerson v. LVNV Funding, LLC,*
    No. 14 C 8371, 2015 U.S. Dist. LEXIS 40457 (N.D. Ill. Mar. 27, 2015).......14

*Eastern Equip. & Servs. Corp. v.  Factory Point Nat'l Bank,*
    236 F.3d 117 (2d Cir. 2001) ...............................................................9

*Edwards v. LVNV Funding, LLC,*
    539 B.R. 360 (Bankr. N.D. Ill. 2015) .........................................14, 17

*In re Elsub Corp.,*
    70 B.R. 797 (Bankr. N.J., 1987) .........................................................5

*Feggins v. LVNV Funding LLC,*
    No. 13-11319-WRS, Adv. Pro. No. 14-1049-WRS 2015 Bankr. LEXIS
    3964 (Bankr. M.D. Ala. Nov. 20, 2015)...........................................14

*Gardner v. State of New Jersey,*
    329 U.S. 565 (1947)...........................................................................13

*Gatewood v. CP Medical, LLC,*
    533 B.R. 905 (B.A.P. 8th Cir. 2015) ...............................................14

*Grandidier v. Quantum3 Group, LLC*,
    No. 1:14-cv-00138-RLY-TAB, 2014 U.S. Dist. LEXIS 169279 (S.D.
    Ind. Dec. 8, 2014) ..................................................................................14

*Holloway v. Am. Infosource, LP*
    (No. 14-80660-WRS, Adv. Pro. No. 15-8038-WRS, 2015 Bankr.
    LEXIS 3035 (Bankr. M.D. Ala. Sept. 8. 2015) ...............................14

*Johnson v. Midland Funding, LLC,*
    No. 14-0322-WS-C, 2015 U.S. Dist. LEXIS 36581
    (S.D. Ala. March 24, 2015) .........................................................8

*In re LaGrone*,
    525 B.R. 419 (Bankr. N.D. Ill. 2015) ...........................................12

*Morton v. Mancari*,
    417 U.S. 535 (1974)...................................................................2, 8

*Moses v. CashCall, Inc.*,
    781 F.3d 63 ..................................................................................9

*Olson v. Midland Funding, LLC*,
    No. CCB-13-1882, 2013 U.S. Dist. LEXIS 177241
    (D. Md. Dec. 18, 2013)...............................................................3, 11

*Patrick v. PYOD, LLC*,
    39 F. Supp. 3d 1032 (S.D. Ind. 2014)...........................................14

*Pa. Dep't of Public Welfare v. Davenport*,
    495 U.S. 552 (1990).....................................................................6

*Pertuso v. Ford Motor Credit Co.*,
    233 F.3d 417 (6th Cir. 2000) .......................................................10

*POM Wonderful LLC v. Coca-Cola Co.*,
    134 S. Ct. 2228 (2014).................................................................7

*Pearl-Phil GMT Ltd v. Caldor Corp.*,
    266 B.R. 575 (S.D.N.Y. 2001) .....................................................6

iv

*Randolph v. IMBS, Inc.*,
    368 F.3d 726 (7th Cir. 2004) ...........................................................................7

*In re Remington Rand Corp.*,
    836 F.2d 825 (3d Cir. 1988) ............................................................................6

*Ruth v. Triumph Partnerships*,
    577 F.3d 790 (7th Cir. 2009) ........................................................................12

*In re Schlein*,
    8 F.3d 745 (11th Cir. 1993) ...........................................................................10

*In re Seak*,
    No. 3:13-bk-5446-PMG, 2015 Bankr. LEXIS 490
    (Bankr. M.D. Fla. Jan. 22, 2015) ..................................................................14

*Shipley v. Meadowbrook Club, Inc.*,
    211 Md. 142 (Md. 1956) ..................................................................................3

## STATUTES

11 U.S.C. § 101(5) .............................................................................................5
11 U.S.C. § 502(b)(1) ......................................................................................7, 8
11 U.S.C. § 704(a)(5) ......................................................................................7, 8
15 U.S.C. § 1692e ............................................................................................11
28 U.S.C. § 157(a) .............................................................................................9

## RULES

Fed. R. Bankr. P. 3001 ....................................................................................16
Fed. R. Bankr. P. 9011 .....................................................................................8

# ARGUMENT

Atlas' Opposition Brief engages in an extended exercise in victim-blaming typical of abusers of all stripes.  Atlas assigns responsibility to everyone but itself, from trustees to debtors to courts themselves, paying no heed to its own precipitating role.  Rather, Atlas styles itself both as a savior, selflessly providing debtors with an opportunity to discharge unenforceable debts, and as a martyr, forced by *Crawford v. LVNV Funding, LLC* to answer for its own actions.  It trumpets the notion of an unalienable and unbounded right to file proofs of claim.

Atlas' grandiose self-image cannot mask the fact that it willfully exploits the very same systemic weaknesses it now tries to use in its defense. Nor does it hide the lack of support in either statute or precedent for the underpinnings of Atlas' preclusion arguments.   At every turn, Atlas exaggerates the weight of authority in its favor, by insinuation, misconstruction, or outright misstatement.

Appellants' opening brief provides a robust explanation of the arguments underlying their appeal, many of which Atlas ignores completely or simply dismisses as wrong without any support.  Appellants need not rehash all of the arguments in their opening brief but rather focus on the most glaring flaws in Atlas' reasoning.

## I.      The Bankruptcy Code and the FDCPA Are Complementary Statutes

Atlas asserts a conflict between the Fair Debt Collection Practices Act ("FDCPA") and the Bankruptcy Code both by occupation of the field by the Bankruptcy Code and by implied conflict between the statutes.  Neither argument succeeds.  Both arguments rest on Atlas' erroneous belief in its unrestricted entitlement to file any proof of claim it wants, no matter how far-fetched or the impact on the parties or the process.  Atlas also rests both arguments on an unsupported notion of the primacy of the Bankruptcy Code over other federal statutes.  Notably absent from Atlas' analysis is the Supreme Court directive, "when two statutes are capable of co-existence . . .  to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

### A. The Bankruptcy Code Does Not Permit the Filing of Proofs of Claim on Time-Barred Debt

Atlas puts great stock in the notion that a "claim" under the Bankruptcy Code may include a debt not merely unmatured or contingent but unenforceable by virtue of the statute of limitations.  Time-barred debt is not enforceable under state law, and the Bankruptcy Code, accordingly, does not provide a right to file a claim on it.

1.    **Time-Barred Debt is Not Enforceable**

   a.  **Maryland Law Does Not Recognize Judicial Enforceability of Time-Barred Debt**

Though time-barred debt may remain as a moral obligation, it is not enforceable under Maryland law.  The existence of a time bar on a debt, by definition, means that it is *not* enforceable by judicial action, even if the debt remains—that it is *barred*.  Indeed, the District of Maryland, in assessing a claim under the Maryland Consumer Debt Collection Act ("MCDCA") for an attempt to "enforce any right with knowledge it did not exist," specifically listed a time-barred debt as a non-existent right.  *Olson v. Midland Funding, LLC*, No. CCB-13-1882, 2013 U.S. Dist. LEXIS 177241, at *22 (D. Md. Dec. 18, 2013).

Atlas' Maryland authority on this issue is even more damaging to its argument.  In *Shipley v. Meadowbrook Club, Inc.*, the court rejected a conversion action on a note, "since the note was concededly barred by limitations."  211 Md. 142, 151 (Md. 1956).  The court resolved the claim in the creditor's favor based on principles of equity because the debtor had reaffirmed the debt, despite the time bar.  *Id.* at 152 ("appellant has never denied his promise . . . or unconditionally declined to do so. He testified he was always ready and willing to complete the transfer.")

### b. Atlas Purposefully Tricks Debtors into Reactivating Time-Barred Debt

Atlas's attitude about the ability of debtors to revive a time-barred debt is illuminating. Atlas obliviously argues the debtor's ability to revive a time-barred debt as a point in support of its argument. While it is true that a debtor can reactivate a stale debt *at her option* by acknowledging a debt or making partial payment, that choice remains with the debtor. When the debtor's *inaction* in failing to plead an affirmative defense amounts to a revival, however, the FDCPA prohibits filing the case. It is clear that, by filing proofs of claim on time-barred debt, Atlas is trying to trick debtors into unwittingly reviving the statute and making their debts enforceable. By flatly stating, "if either of the Appellants made payments on their debts or otherwise acknowledged them, the limitations period would run anew," Atlas' brief only confirms its scheme. Opp. Br. at 15.

Atlas reveals its plans even more frankly with its statement that, "[w]hile the conduct of filing the lawsuit and obtaining the judgment might result in FDCPA liability for a debt collector, there is nothing within the statute that makes the state court judgment a nullity."[1] Opp. Br. at 16. It contends that the same is true for its filing of proofs of claim: not only may proofs of claim reactivate statutes of

---

[1] Appellants do not contend that either the FDCPA or the MCDCA nullifies a proof of claim. They filed objections to the proofs of claim for precisely that reason. The FDCPA and MCDCA, instead, provide liability and deterrence for the act of filing itself under these circumstances.

4

limitations but the proofs of claim will remain valid even if they violate debt collection laws  *Id.*  Atlas, in essence, argues that even if its collection methods violate the FDCPA, they are effective in getting its money.  Such behavior is the definition of "willful" and displays a profound disrespect for the bankruptcy process and the courts that oversee it.

### 2.    The Bankruptcy Code's Definition of "Claim" Does Not Include Unenforceable Debts

The definition of "claim" in the Bankruptcy Code includes a laundry list of descriptors for the rights to payment encompassed by that term: "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C.  § 101(5)(A).  "Unenforceable," however, is notably absent from that list.[2]  The bedrock statutory interpretation principle *expressio unius est exclusio alterius* prohibits this Court from implying its inclusion.  Indeed, the Supreme Court

---

[2] Though a debtor may reactivate a stale claim, it does not fall into the category of "contingent."  Contingent liabilities depend on the occurrence or non-occurrence of an external event, such as the guarantee of a promissory note, liability of a defendant in a negligence action, or an aleatory contract.  *See In re Elsub Corp.*, 70 B.R. 797, 808 (Bankr. N.J., 1987) (listing examples of contingent liability).  The debtor's own reactivation of liability cannot create a contingency: it would be circular for liability to arise subject to the assumption of liability.  It is likewise not "unmatured," as it depends on action of the debtor and not merely time to ripen.  Moreover, it would be perverse to consider debt that is beyond the statute of limitations "unmatured."

specifically said that "[t]he plain meaning of a 'right to payment' is nothing more nor less than an *enforceable* obligation."

Atlas tries to cast the *Davenport* opinion as diminishing the importance of a lawsuit as a debt enforcement mechanism. The Court, however, made no such holding. Because the right to payment at issue there was criminal restitution, "the right created by such an order made as a condition of probation is in some sense greater than the right conferred by an ordinary civil obligation, because it is secured by the debtor's freedom." *Davenport*, 495 U.S. at 559. Rather than a civil proceeding for non-payment, a debtor would face a probation revocation hearing, an enforcement model in the same mold as a lawsuit but with higher stakes. The Court did not, therefore, lower the bar as to the meaning of enforceable debt. It certainly did not expand the definition of "claim" under the Bankruptcy Code to include time-barred debt that is unenforceable in any court or other tribunal.[3]

### 3. The Objection Requirement of the Bankruptcy Code Confirms Its Bar on Unenforceable Debt

Atlas makes the illogical argument that the Bankruptcy Code provides for objections to proofs of claim on time-barred debt specifically because creditors are

---

[3] None of the other authority Atlas cites provides additional support for the notion that a claim includes unenforceable debt. *In re Remington Rand Corp.*, 836 F.2d 825, 831-32 (3d Cir. 1988) (discussing unmatured and contingent rights to payment); *Pearl-Phil GMT Ltd v. Caldor Corp.*, 266 B.R. 575, 581 (S.D.N.Y. 2001) (same).

allowed to make those claims.[4]  Atlas seems to envision the combination of the

claims process with Sections 502(b)(1) and 704(a)(5) as a sort of whack-a-mole,

allowing it to keep popping up claims for the trustee and court to knock down.

Congress surely did not intend to set up such a game.  It follows, therefore, that

unenforceable claims were *never* permitted.  Sections 502(b)(1) and 704(a)(5) are a

failsafe for those filers that do not heed the Supreme Court's definition of "claim"

as enforceable.

## B. The FDCPA and the Bankruptcy Code Do Not Conflict in Application

Atlas suggests that the preclusion test is whether the FDCPA "contradict(s)

any portion of the Bankruptcy Code."  Opp. Br. at 39.  This quotation, apparently

from *Randolph v. IMBS, Inc.*, does not set forth a test but rather a description of an

*absence* of conflict in that case.  368 F.3d 726, 732 (7th Cir. 2004).  As recently as

last year, the Supreme Court clearly established the relevant principles of statutory

interpretation for two overlapping federal statutes.  *POM Wonderful LLC v. Coca-

Cola Co.*, 134 S. Ct. 2228, 2238 (2014).  Those principles require the court to look

for a way to apply both statutes, not, as Atlas would have it, a reason not to.

In the same vein, Atlas misconstrues the nature of Appellants' argument

regarding the interaction of the FDCPA and the Bankruptcy Code.  The FDCPA

---

[4] For its argument, Atlas relies on 11 U.S.C. § 502(b)(1), the directive to
bankruptcy courts to allow claims and the list of exceptions to that allowance.
Atlas ignores completely the even more potent statutory implications of §
704(a)(5), the trustee's requirement to object to unenforceable claims.

does not trump the Bankruptcy Code any more than the Bankruptcy Code trumps the FDCPA. It is a truism of statutory interpretation that where two statutes conflict, one will give way. Yet Atlas has stated the principle without proving any conflict. The Supreme Court has directed courts to harmonize such co-equal federal statutes whenever possible. *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Atlas, however, ignores this Supreme Court directive and does not even counter that argument—because it cannot. Applying the Supreme Court's approach, the FDCPA provides a complement to, not an end run around, the provisions of the Bankruptcy Code.

Atlas' entire argument rests on the faulty premise that the Bankruptcy Code grants a completely unrestricted entitlement to file proofs of claim. Yet the Bankruptcy Code prohibits filing without a good faith basis and adds additional layers of enforcement with the objection process, negating the viability of unenforceable claims in bankruptcy. *See* Fed. R. Bankr. P. 9011; 11 U.S.C. §§ 502(b)(1), 704(a)(5). It is thus implausible that any part of the Code provides license, let alone entitlement to file such blatantly objectionable and unenforceable claims.[5] Atlas' attempted reliance on the amendment history of the Bankruptcy

---

[5] Atlas relies on *Johnson v. Midland Funding, LLC* for much of its argument. No. 14-0322-WS-C, 2015 U.S. Dist. LEXIS 36581 (S.D. Ala. March 24, 2015). That case, from the District Court for the Southern District of Alabama, seems to conflict with the Eleventh Circuit precedent in *Crawford v. LVNV Funding, LLC*,

Code is also misplaced. Congress provided no exception for unenforceable proofs of claim as it amended that statute because no exception was necessary: no right existed in the first place. Such an "exception" is written into the Code itself. Because both the Bankruptcy Code and the FDCPA prohibit filing proofs of claim on stale debt, Atlas may comply with both—or, as here, violate both—and the statutes do not conflict.

## C.    The Bankruptcy Code Is Not Comprehensive

Atlas' assertions about the comprehensiveness of the Bankruptcy Code conflate the exclusive jurisdiction of the bankruptcy courts with the exclusive application of the Bankruptcy Code for all matters touching the bankruptcy process. Indeed, the Bankruptcy Code itself specifically gives bankruptcy courts jurisdiction over non-bankruptcy claims related to bankruptcy cases, a point Atlas does not dispute or even address. 28 U.S.C. § 157(a). *Moses v. CashCall, Inc.*, cited by Atlas, addresses these jurisdictional issues, rather than the scope of the statute. 781 F.3d 63, 72. Notably, that case involved a dispute under the North Carolina Debt Collection Act ("NCDCA"). The plurality of this Court held that the NCDCA claim in that case, though related to the bankruptcy, did not even require the jurisdiction of the bankruptcy court, let alone, as Atlas would have it, preemption by the Bankruptcy Code. *See also Eastern Equip. & Servs. Corp. v.*

---

758 F.3d 1254 (11th Cir. 2014) and is currently on appeal. *Johnson v. Midland Funding, LLC*, No. 15-11240-E (11th Cir.).

*Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2d Cir. 2001) ("If anywhere, therefore, state tort claims alleging violations of an automatic stay must be brought *in the bankruptcy court itself*, and not as a separate action in the district court") (emphasis supplied; internal quotation marks omitted).

Atlas' other authority in support of the notion of the Bankruptcy Code's comprehensiveness is equally unavailing.  Its citation to *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship* references the concurring opinion of Justices Thomas and Scalia, which took issue with the majority's approach to interpreting the Bankruptcy Code.  526 U.S. 434, 461 (1999).  *Pertuso v. Ford Motor Credit Co.* addresses preemption of a state unjust enrichment claim, with a specific focus on the need for nationally uniform laws for bankruptcy.  233 F.3d 417, 425 (6th Cir. 2000).  The FDCPA, a federal statute, raises no such uniformity concerns.[6]  Finally, in *In re Schlein*, the Eleventh Circuit noted that *both* the Bankruptcy Code and ERISA were comprehensive in their own ways.  8 F.3d 745, 753 (11th Cir. 1993).  Because two "comprehensive" federal statutes interacted, however, the court noted the need to give meaning to both.  *Id.*  That court also noted the Bankruptcy Code's built-in deference to state law: "As part of this scheme, responsibility for defining what property debtors will take out of bankruptcy is shared with the states."  *Id.*

---

[6] The provision of the MCDCA at issue here parallels the FDCPA and, accordingly, would raise no challenges to national uniformity.

## II.    The Filing of a Proof of Claim Is an Action to Collect a Debt

### A. To the Extent It Relates, Atlas Meets the Test for Application of the FDCPA

Atlas conceives of a narrowly drawn FDCPA that bars only the traditional harassment specifically enumerated in the statute.  Using its narrow reading of the FDCPA, Atlas describes a three-factor test, though it does not actually analyze those factors.  At the outset, it is not clear that the test Atlas uses even applies here. Courts have used that test for "communications" under the FDCPA.  *See Olson v. Midland Funding, LLC*, No. CCB-13-1882, 2013 U.S. Dist. LEXIS 177241, at *16 (D. Md. Dec. 18, 2013) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) (listing factors as an "'animating purpose' to induce payment," "the relationship between the parties," and "the purpose and context of the communication").  Congress, however, anticipated the creativity of debt collectors and, for that reason, included a catchall provision in the FDCPA, extending the reach of the statute to "any false, deceptive, or misleading *representation or means* in connection with the collection of any debt."  15 U.S.C. § 1692e (noting that the statute's enumerated list was "[w]ithout limiting the general application of the foregoing" catchall).

Even if the test does apply, Atlas' actions meet the requirements for each factor. The Seventh Circuit concluded that "the defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to

11

collect a debt." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 799 (7th Cir. 2009). Similarly, Atlas would not have filed its proof of claim for these Appellants were it not attempting to collect debts.

The first factor, an "animating purpose to induce payment," and the third, "the purpose and context," follow the same common sense analysis. Atlas may be making a request to participate in the bankruptcy process, but it is doing so for the sole purpose of getting paid. Indeed, Atlas claims that it does not make a "demand for payment" but only "assert[s] a right to payment." Opp. Br. at 19. Such hair-splitting is beneath the dignity of this Court.

The relationship between the parties, also weighs in favor of Atlas' behavior as debt collection. Atlas' only relationship with Appellants arises from its ownership of their alleged debts. *See Ruth*, 577 F.3d at 799 (relationship supported finding that activity was debt collection where only connection was that of debtor and debt collector). The entity of the "bankruptcy estate" does nothing to sever that relationship: "§ 1692k of the Act makes debt collectors liable to 'any person' as to whom they violate its provisions, not simply to the consumer who owes the debt subject to collection." *In re LaGrone*, 525 B.R. 419, 425 (Bankr. N.D. Ill. 2015). Atlas' actions certainly harm the estate by diminishing the available money for legitimate creditors.

Moreover, the bankruptcy estate is not meaningfully distinct from the debtor herself. As discussed in the opening brief, a debtor's liabilities are subject to adjustment based on changes in circumstances post-discharge. In addition, claims on time-barred debt that evade objection may prevent a debtor from getting the benefits of a 100% payment plan. Atlas' unsupported comment that debtors "rarely" achieve 100% payment plans only affirms the impact of allowing unenforceable claims to proceed. *See* Opening Br. at 25-26.

## B. The Automatic Stay Is Irrelevant to the Applicability of the FDCPA

Atlas tries to force relevance upon the automatic stay where none exists. It twists the logic beyond that of the district court in *Covert v. LVNV Funding, LLC* by citing numerous cases about the "absurd result" of punishing automatic stay violations. No. DKC 13-0698, 2013 U.S. Dist. LEXIS 175651 (D. Md. Dec. 9, 2013). Appellants do not assert a violation of the automatic stay and make no suggestion that the filing of a proof of claim or any other action within the bankruptcy process would amount to a violation.

## C. Authority Requires Finding the Filing of Proofs of Claim to Be Debt Collection

Its multi-page string cites notwithstanding, Atlas does not dispute or even address the Supreme Court's unequivocal statement that "fil[ing] a proof of claim . . . is using a traditional method of collecting a debt." *Gardner v. State of New*

13

*Jersey*, 329 U.S. 565, 573 (1947).  That precedent, from the highest court, still stands, rendering any contradictory authority virtually meaningless.

Moreover, Atlas' dismissal of *Crawford* ignores the fact that the Eighth Circuit reached the same conclusion on the question of proofs of claim as debt collection.  *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014); *Gatewood v. CP Med., LLC*, 533 B.R. 905, 908 (B.A.P. 8th Cir. 2015) ("When a creditor files a proof of claim before the bankruptcy court, this amounts to a civil action to collect the debt").  *Crawford* is no outlier but rather a bellwether in recognizing and addressing an innovation in debt collection abuse.  The *Crawford* Court is no more responsible for FDCPA cases than a new police chief is for a crowded jail.  The *Crawford* opinion provided a means of addressing a significant existing problem.  The litigation that has followed reflects the problem rather than the remedy.

## III.    The Filing of a Proof of Claim on Time-Barred Debt Violates the FDCPA

Downplaying their actions as "mere filing" does nothing to obscure the significant impact Atlas' filings can have on a debtor and legitimate creditors in a single case.[7]  In the aggregate, the volume of these "mere" filings by Atlas and

---

[7] Atlas' review of post-*Crawford* decisions significantly exaggerates the weight of authority in its favor.  The "vast majority" of courts do not take Atlas' position. Opp. Br. at 29.  Indeed, cases some of the same courts as those cited by Atlas take the opposite view.  *Edwards v. LVNV Funding, LLC*, 539 B.R. 360, 369 (Bankr.

others wreaks havoc on the bankruptcy system.  Opp. Br. at 10.  Nowhere does

Atlas address at all the effect of its actions on legitimate creditors, whose stake in a

bankruptcy estate is diminished by every time-barred claim that escapes objection.

### A. Atlas Confuses the Requirements of the Bankruptcy Rules with a License

Atlas seems to believe that the disclosure requirements of Rule 3001 create

entitlement to file time-barred proofs of claim: in Atlas' view, so long as it

---

N.D. Ill. 2015) (finding "no significant difference between filing a collection action in state court and filing a proof of claim in bankruptcy court" for purposes of applying the FDCPA); *Brimmage v. Quantum3 Group LLC*, 523 B.R. 134, 138 (Bankr. N.D. Ill. 2015) ("the filing of a proof of claim is merely the bankruptcy analog of filing a complaint or sending a demand letter to recover on a debt outside of bankruptcy"); *Donnerson v. LVNV Funding, LLC*, No. 14 C 8371, 2015 U.S. Dist. LEXIS 40457, at *16-17 (N.D. Ill. Mar. 27, 2015)  (applying the "unsophisticated consumer" standard); *Patrick v. PYOD, LLC*, 39 F. Supp. 3d 1032, 1036 (S.D. Ind. 2014) ("In essence, the creditor is trying to use the bankruptcy system to collect upon a debt, which it cannot use other legal means to collect."); *Grandidier v. Quantum3 Group, LLC*, No. 1:14-cv-00138-RLY-TAB, 2014 U.S. Dist. LEXIS 169279, 7-8 (S.D. Ind. Dec. 8, 2014) (allowing FDCPA claim for time-barred proof of claim).  In the recent past, the weight of authority has been far more balanced that Atlas suggests.  *See Gatewood v. CP Med., LLC*, 533 B.R. 905, 910 (B.A.P. 8th Cir. 2015), (leaving open the possibility that the FDCPA could apply to an inaccurate or otherwise false or misleading proof of claim); *Feggins v. LVNV Funding LLC*, No. 13-11319-WRS, Adv. Pro. No. 14-1049-WRS 2015 Bankr. LEXIS 3964, at *7 (Bankr. M.D. Ala. Nov. 20, 2015) ("A debt collector who files a proof of claim in bankruptcy on a facially time-barred debt deceptively, unfairly, and unconscionably attempts to collect a debt in violation of §§ 1692e and 1692f of the FDCPA"); *Holloway v. Am. Infosource, LP* (No. 14-80660-WRS, Adv. Pro. No. 15-8038-WRS, 2015 Bankr. LEXIS 3035 (Bankr. M.D. Ala. Sept. 8. 2015) (applying least sophisticated consumer standard); *In re Seak*, No. 3:13-bk-5446-PMG, 2015 Bankr. LEXIS 490, at *7 (Bankr. M.D. Fla. Jan. 22, 2015) (allowing FDCPA claim for time-barred proof of claim).

provides the basis for objection, it is free to be objectionable.  As discussed in Section I, *supra*, the Bankruptcy Code provides no entitlement to file an objectionable proof of claim.  The rules relating to the details of proofs of claim do not alter that fundamental fact.  Setting out the particulars of a wrongful act that enable the proper authority—here, a trustee, debtor, or attorney—to intervene makes the act no less wrongful.   Nor does anything in the 2011 Amendment to Fed. R. Bankr. P. 3001 suggest a right to file time-barred proofs of claim.  Rather, the Amendment reflects a recognition of an increased effort on behalf of debt buyers to file time-barred, objectionable proofs of claim and one step towards addressing the problem.

### B. The Bankruptcy Process Does Not Provide an Adequate Safeguard

Voluntarily entering bankruptcy does not mean that a debtor willingly subjects herself to all unfair and/or unconscionable behavior that unscrupulous players might throw at her, anymore than a sick patient entering a hospital for routine surgery willingly subjects herself to a mad scientist's experiments.

### 1.    Atlas Takes Advantage of Systemic Weaknesses

Appellants' opening brief details the inadequacies of the bankruptcy system in protecting debtors from predatory behavior like Atlas'.  Opening Br. at 17-21. Atlas cannot now fault the same inadequacies on which its business model relies. In particular, Atlas cannot blame trustees for not doing a job it has intentionally

made more difficult, with the goal of, for its own gain, exacerbating and taking advantage of their lack of resources. If the trustees are insufficiently equipped to perform their duties, then the failure lies with the system, not with the trustees. The FDCPA provides additional support to this weak point in the system by incentivizing debtors and their attorneys to police and deter bad behavior such as Atlas'.

Atlas' brief says nothing about the nearly 20% of debtors who are unrepresented by counsel. And though Atlas points out that counsel here objected, as the court in *Edwards v. LVNV Funding, LLC* noted, "some counsel are less diligent than others." 539 B.R. 360, 366 (Bankr. N.D. Ill. 2015). Where counsel take the default flat-fee payment, they have little incentive to put in the significant time and effort it takes to object to claims that should never have been filed in the first place. Atlas recognizes and capitalizes on this incentive structure. Even where an attorney does object, Atlas' actions still harm legitimate creditors: where, as here, counsel has opted out of the flat fee payment in order to reducing the burden on him of filing an objection, the objection process raises the administrative costs to the estate. Where the claims are, *ab initio*, unenforceable, the entire exercise is, quite simply, a waste.

17

### 2.     Atlas' Actions Serve Only Itself, Not the Bankruptcy Process

Atlas may lay blame on trustees or counsel or even on the debtors themselves, but in reality, it relies on each of them to overlook the details of the claims it files.  Atlas nonetheless styles itself as an altruistic guardian of the bankruptcy process, filing multiple claims on time-barred debt *not* to get paid on that debt but to give the debtors a fresh start. Such an argument is transparently self-serving.  A debtor seeking discharge from time-barred debt is free to pursue it at her own option. Atlas, however, buys debt mere days before filing proofs of claim on that debt.  What incentive would it have to buy the debt at all if its only goal were to allow debtors to discharge it?  Logic, human nature, and capitalism all lead to the simple, inexorable conclusion that Atlas filed its proofs of claim not to help debtors or the bankruptcy process but to help itself—to get paid.

Atlas puts a gloss on its savior narrative here because the Appellants did not schedule the debts at issue. The fact remains, however, that these debts are time-barred.  Even absent a discharge, Atlas could undertake no collections actions on them in court or that did not comply with the FDCPA.  If a debt is unscheduled, it is most likely because collection efforts have long ago ceased and all parties, including the creditor, have long forgotten the debt.  It may even be that that the debt is based on mistaken or fraudulent underlying information, unknown to the debtor at all.  Atlas, however, unearths these loans from their statute of limitations

graveyard and, with the specter of continued debt collection, purports to save debtor from Atlas itself.  Debtors would be better served by the tools to save themselves—the FDCPA and the MCDCA.

## CONCLUSION

For the foregoing reasons, Appellants reiterate their request that the bankruptcy court's judgment be reversed, and the case be remanded for further proceedings.

Respectfully submitted,

  /s/ *Courtney L. Weiner*
Courtney L. Weiner
Morgan W. Fisher
Law Office of Morgan Fisher LLC
700 12th Street, Suite 700
Washington, DC 20005
*Counsel for Appellants*
*Chaille Dubois and Kimberly Adkins*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

   The word count of this brief is 4,598.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using <u>MicroSoft Word, Times New Roman, 14 point.</u>

December 7, 2015

       /s/ *Courtney L. Weiner*
         Courtney L. Weiner

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this December 7, 2015, filed the required copies of the foregoing Reply Brief of Appellant in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Reply Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Alan Craig Hochheiser
BUCKLEY KING LPA
600 Superior Avenue East
1400 5th 3rd Center
Cleveland, OH 44114
Email: hochheiser@buckleyking.com

Donald S. Maurice, Jr. MAURICE WUTSCHER, LLP Suite 2007
5 Walter East Foran Boulevard
Flemington, NJ 08822
Email: dmaurice@mauricewutscher.com

_/s/ *Courtney L. Weiner*_____
Courtney L. Weiner